166 N.J. Super. 540 (1979)
400 A.2d 128
IN THE MATTER OF JERSEY CENTRAL POWER AND LIGHT COMPANY (OYSTER CREEK NUCLEAR GENERATING STATION).
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1979.
Decided March 2, 1979.
*542 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Steven P. Russo argued the cause for appellants.
Ms. Carla Vivian Bello, Deputy Attorney General, argued the cause for respondent Board of Public Utilities (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie Conley, Assistant Attorney General, of counsel).
Ms. Nusha Wyner argued the cause for respondent Jersey Central Power & Light Company (Mr. John G. Graham, of counsel).
*543 PER CURIAM.
In a petition filed with the Public Utilities Commission (PUC), appellants, owners of property bordering on Oyster Creek and Barnegat Bay, in the vicinity of the Oyster Creek Nuclear Generating Station (hereinafter OCNGS), sought to have the PUC compel Jersey Central Power and Light Company, the utility operating OCNGS, to condemn their lands. As alternative relief, they requested the PUC to "revoke any and all licenses issued to Jersey Central Power & Light Company relating to the operation of Oyster Creek Nuclear Generating Station." The PUC, by letter opinion dated February 14, 1978, dismissed the petition concluding that it lacked jurisdiction to compel a utility to condemn. It made no mention in this opinion as to the alternative relief requested. Petitioners appeal.
The petition having been dismissed as a matter of law, the facts concerned in this appeal are necessarily sparse. They are derived exclusively from the petition itself and consist of a description of the results of thermal and saline pollution of petitioners' adjacent lands, which largely mirror the complaints made in connection with Van Dissel v. Jersey Central Power & Light Co., 152 N.J. Super. 391, 396 (Law Div. 1977). Hence, among their complaints are that the increased temperature of Oyster Creek, sometimes as high as 90° F, results in frequent fogging of petitioners' property with resulting mildew damage to their personalty and homes. The higher water temperatures, together with increased salinity resulting from the discharge of sea water from Barnegat Bay into the naturally fresh water of Oyster Creek, has provided a medium for the growth of shipworms, a boring organism which destroys all untreated wood surfaces. An infestation of these shipworms has in fact resulted in extensive damage to boats, docks and bulkheadings. By reason of these conditions and the further inability to use their land for recreational purposes, their property has dramatically decreased in value and cannot be sold.
Petitioners offer these facts, which we take as true, as support for their contention that their property has been taken by *544 the utility and as the basis for their request that the PUC compel the utility to condemn their property and pay them just compensation therefore. The PUC, while taking no position regarding whether or not a taking has occurred, concluded that it lacked jurisdiction to honor petitioners' request even were it inclined to do so. We agree with that conclusion.
Inverse condemnation is a remedy designed to protect a landowner whose property has been taken de facto by insuring that he be paid reasonable compensation therefor. Hence, an appropriation of property by a governmental entity or private corporation having power of eminent domain without its having undertaken to condemn or pay compensation to the landowner for the taking, can be redressed by the owner's action in the nature of mandamus to compel institution of condemnation proceedings. Morristown Bd. of Ed. v. Palmer, 88 N.J. Super. 378, 383 (App. Div. 1965), rev'd on other grounds, 46 N.J. 522 (1966); Haven Homes v. Raritan Tp., 19 N.J. 239 (1955). Condemnation proceedings are normally initiated by the condemning authority; inverse condemnation proceedings are initiated by the landowner  hence the "inverse" label. Breidert v. Southern Pacific Co., 61 Cal.2d 659, 39 Cal. Rptr. 903, 905, 394 P.2d 719, 721 (Sup. Ct. 1964).
An owner's action to compel condemnation, founded as it is on an alleged violation of state and federal constitutional guarantees of just compensation for property taken for public use, is legal in nature cognizable only by a court of law. N.J.S.A. 20:3-5; 11 McQuillin, Municipal Corporations, § 32.118 at 571 (1977). At issue in such a proceeding is whether the actions of the entity vested with condemning power in its impact on the owner's land constitutes a taking thereof. Courts make such determinations, not administrative agencies. Although the Legislature may vest the PUC with such jurisdiction, it has not done so and petitioners have failed to direct us to any provision having that effect. Petitioners' reliance on N.J.S.A. 48:3-17.7 is mis-conceived. That provision requires advance approval by the *545 PUC of any utility's exercise of its power of condemnation. It was designed as protection against arbitrary exercise of a utility's condemnation power; it empowers the PUC to prevent condemnation, not compel it. See Van Dissel v. Jersey Central Power & Light Co., supra 152 N.J. Super. at 411-412.
Petitioners are not, however, without remedy. They have already commenced action in the Superior Court seeking to compel the utility to condemn their land. Indeed, trial in Van Dissel v. Jersey Central Power & Light Co., supra, may do much to protect their interests since many of the same issues will be litigated in that suit.
As to the alternative relief claimed in the petition, revocation of Jersey Central's license with respect to its operation of OCNGS, we affirm the Commission's dismissal. Petitioners have not referred us to any statutory provision requiring the PUC to exercise its jurisdiction over this kind of claim. We know of none.
Although not referred to in their original petition, petitioners have nonetheless argued before us that the PUC should have accepted jurisdiction over their claims of pollution with the objective of eliminating the abuses damaging their land. The problem of federal preemption of state action with respect to the sought administrative relief went un-mentioned in petitioners' brief and argument. Both the PUC and Jersey Central have taken the position that all action in this area is preempted since modification of the method by which the plant's pumps are cooled, the principal cause of petitioners' damage, would intrude into the reserved federal area regulating disposal of radioactive wastes. See State v. Jersey Central Power & Light Co., 69 N.J. 102, 111-116 (1976); Van Dissel v. Jersey Central Power & Light Co., supra. Had this claim been asserted in the petition, the PUC could properly have taken the position that because the requested relief could not have been granted, jurisdiction was rejected.
Affirmed.