**Gary MOORE, Plaintiff,**

v.

**CITY OF COSTA MESA, et al., Defendants.**

**No. CV 87–1125 MRP.**

United States District Court, C.D. California.

Aug. 26, 1987.

Hugh R. Coffin, Pizer & Michaelson, Inc., Santa Ana, Cal., for plaintiff.

Larry T. Pleiss, Madory, Booth, Zell & Pleiss, Tustin, Cal., for defendants.

**AMENDED MEMORANDUM OF DECISION**

PFAELZER, District Judge.

This Court heard oral argument on plaintiff Gary Moore's motion for a new trial on August 10, 1987. Having read the papers submitted and considered the arguments contained therein, the Court denies plaintiff's motion.

I. *Facts*

Plaintiff Gary Moore owns two adjacent lots within the defendant City of Costa Mesa. At present, there are houses on each of the two lots.[1] Moore lives in one

---

**1.** The record does not reflect whether Moore has torn down the houses and begun to con-

struct his office building. However, it is clear that the parties do not dispute that Moore had

house, and uses the other for his carpet installation business. In late 1983, Moore requested zoning variances to build a large commercial building, with both warehouse and office space, on the two lots. Moore's lots front on Wilson Street in Costa Mesa. The city's master plan calls for the eventual widening of Wilson Street. The city granted Moore his zoning variance and permits on the condition that he deed over to the city the land necessary for the widening of Wilson Street. This land represented just over ten percent of Moore's entire parcel. The city required this condition as part of a stated policy covering situations in which a proposed new development would increase traffic on a street that needed widening. Moore unsuccessfully appealed to the Costa Mesa Planning Commission and to the City Council. On May 21, 1984, having exhausted his administrative remedies, Moore sued the city in Orange County Superior Court requesting (1) mandamus to set aside the condition; (2) declaratory relief that the condition was invalid; (3) damages for inverse condemnation; and (4) general damages and attorney's fees. The Superior Court, which reviews zoning decisions under a "substantial evidence" standard, granted Moore mandamus and declaratory relief. It held that the city's policy was not reasonably related to the relatively small projected increase in traffic from the new building. Moore states that he decided to abandon his claims for damages in the Superior Court, although he never filed any formal document to that effect. The Court of Appeals, in an unpublished decision, affirmed the Superior Court ruling on a 2–1 vote, with the dissenting judge voting to uphold the city's policy. On July 10, 1986, the Supreme Court of California denied review, with Justice Reynoso dissenting.

On February 20, 1987, Moore filed suit in this Court under 42 U.S.C. § 1983. Although he was awarded declaratory relief in the state courts, he claims that the delay in obtaining his permit from 1983 to 1986 constituted an unconstitutional temporary taking of his property, entitling him to monetary damages. He alleges that the delay violated his rights under the Taking Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and his rights to both substantive and procedural due process under the Fourteenth Amendment.[2] Defendants are the City of Costa Mesa, the City Council of Costa Mesa, and ten unnamed Doe defendants.

This Court heard oral argument on June 22, 1987 on defendants' motion to dismiss Moore's complaint. The Court entered judgment dismissing Moore's complaint with prejudice on July 6, 1987, on the grounds that it was barred by res judicata and that it failed to state a claim. On July 16, 1987, Moore timely filed a motion for a new trial under Fed.R.Civ.P. 59, which in this context is essentially the equivalent of a motion for reconsideration.

## II. *Statute of Limitations*

The statute of limitations in California for § 1983 actions is one year. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The parties dispute whether the longer, pre-*Wilson* statute of limitations should apply to this action, but the dispute is immaterial. Moore's deprivation, if any, continued until his relief in state court was final, on July 10, 1986. This suit was filed less than one year later, and was therefore timely even under *Wilson.* Even if Moore's cause of action somehow accrued earlier, his state suit on the same facts tolled the statute. *See, e.g., Valenzuela v. Kraft Inc.,* 801 F.2d 1170 (9th Cir.1986), *modified,* 815 F.2d 570 (1987); *Bollinger v. National Fire Ins. Co.,* 25 Cal.2d 399, 154 P.2d 399 (1944).

the use of the houses for the entire period of the alleged taking, from 1983 until 1986.

**2.** Moore's other constitutional claims only state a cause of action to the extent that his taking claim states a cause of action. As discussed below, the Supreme Court has written a number of opinions in recent years dealing with similar claims, and has always discussed the problem in terms of the takings clause. The parties' arguments and analysis in connection with this motion framed the issues solely in terms of the takings clause.

### III. *Res Judicata*

Although the parties did not argue the issue of res judicata in the motion to dismiss, the Court raised the issue sua sponte. *See McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir.1986). Defendants have relied on this issue in their opposition to the motion now before the Court. The parties agree that Moore originally made a claim for damages on these same facts before the state court, and that this claim was based on essentially the same legal theory now advanced in this Court. Moore states that he decided to abandon this claim for damages before the state court on the authority of *Agins v. City of Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25 (1979), *aff'd*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). *Agins*, in a portion of the opinion which was not reviewed by the U.S. Supreme Court, held that money damages are not available as a remedy for overly restrictive zoning. This portion of *Agins* was recently overruled in *First English Evangelical Lutheran Church v. County of Los Angeles*, — U.S. —, 107 S.Ct. 2378, 2387–89, 96 L.Ed.2d 250 (1987). *First Church* held that even a "temporary taking" between the enactment and judicial invalidation of an overly-restrictive land use ordinance could be compensable under the Fifth Amendment. *See id.*

■ Res judicata bars relitigation in federal court of any state court judgment to the same extent that the state would bar relitigation. *See Heath v. Cleary*, 708 F.2d 1376, 1379 (9th Cir.1983), 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4469 (1981). Moore argues that in light of *Agins*, pressing his claim for money damages in state court would have been futile. However, Moore cites no cases in support of a "futility" exception to the principle of res judicata. Generally, a change in controlling law will not provide an exception to res judicata. *See Federated Dept. Stores v. Moitie*, 452 U.S. 394,

398–401, 101 S.Ct. 2424, 2427–29, 69 L.Ed. 2d 103 (1981); *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503–04 (11th Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985); *In re Tennessee Central Ry. Co.*, 498 F.2d 904, 906 (6th Cir.1974). In any case, Moore's claim for damages was not necessarily futile. If he had been unsuccessful in the Superior Court, he could have pressed his claim on appeal, and, if unsuccessful, petitioned for certiorari to the United States Supreme Court. This is exactly what happened in *First Church*.

Under California law, res judicata applies not only to those claims actually litigated in a prior proceeding, but also to those which could have been litigated as part of that cause of action. The case of *Hatch v. Bank of America*, 182 Cal.App.2d 206, 5 Cal.Rptr. 875 (1960) is instructive. In that case, the plaintiff successfully brought suit to obtain possession of a truck. In a later suit, the plaintiff sought damages for use of the truck during the period of its conversion. The Court dismissed the second suit as barred by res judicata on the ground that the same fundamental set of facts had been presented in the first action. The Ninth Circuit has expressly applied this rule in cases like this one where the plaintiff first brings a state court action for mandamus, and later seeks damages in the federal courts. In *Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 786 (9th Cir.1986), the court held the fact that the plaintiff abandoned his claim for damages in state court did not negate the binding effect of that judgment as res judicata. Claim preclusion applied wherever, as here, there is an identity of facts with those in a previous action. *See McClain*, 793 F.2d at 1033. The fact that a plaintiff requests a different type of relief, or even presents a different legal theory, does not negate or lessen the binding effect of the previous state court judgment.[3] Therefore,

---

**3.** To the extent that Moore argues that the state court judgment was in error, the lower federal courts do not sit as courts of appeal for state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v.* *Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *cf. Pennzoil Co. v. Texaco, Inc.*, — U.S. —, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). To the extent that he argues that the application of res judicata leaves a wrong without a remedy, this contention is incorrect.

the Court holds that Moore's claim for damages under § 1983 is barred by the res judicata effect of his state court judgment.

## IV. *The Merits*

In the alternative, the Court holds that Moore has failed to state a claim for taking without just compensation in violation of the Fifth Amendment.[4]  *First Church* has changed the landscape somewhat in the area of takings law.  *See also, Nollan v. California Coastal Comm'n,* — U.S. —, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

In *First Church,* a flash-flood wiped out a campground belonging to the church. The County Council then passed an ordinance totally barring any construction where the flood had occurred.  The church sued for damages, claiming that this ordinance effected a taking of its property, which was entirely within this floodplain. The state court dismissed the damage claim, holding that even if the ordinance was invalid, such a temporary taking (from the time of enactment until the judicial invalidation of the ordinance) was not compensable in money damages, on the authority of the Supreme Court of California in *Agins.*  The United States Supreme Court overruled, holding that a total government ban on the use of a property, even if temporary in duration, could constitute a "taking" for the purpose of the Fifth Amendment, and must be monetarily compensated.  *See First Church,* 107 S.Ct. at 2387–88; *see also Martino v. Santa Clara Valley Water District,* 703 F.2d 1141 (9th Cir.) (same), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).

■ *First Church* is like this case in that it involves government overregulation of temporary duration.[5]  However, *First Church* is unlike this case in that it involved a complete taking of the property at issue.  In *First Church,* the appellant was completely unable to use its campground as a result of the ordinance at issue.  *Martino* likewise involved a situation in which there had been a complete taking; the landowners in that case were completely unable to use two undeveloped lots across which the local water district planned to route a floodway.  *See* 703 F.2d at 1143–44.[6]  In contrast, in this case, Moore has been able to continue to use his property for his home and business; he has merely been unable to build a new and more profitable building to replace the current buildings.[7]

Moore argues in response that the city's action did constitute a total taking of the strip of his land nearest Wilson Street. However, as the Supreme Court stated in *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed. 2d 631 (1978), " '[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated.  In deciding whether ... a taking [has occurred], this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole[.]"  *See id.* at 130–31, 98 S.Ct. at 2662; *see also Keystone Bituminous Coal Ass'n. v. DeBenedictis,* — U.S. —, 107 S.Ct. 1232, 1248, 94 L.Ed.2d 472 (1987); *Andrus v. Allard,* 444 U.S. 51, 65–66, 100

Moore effectively waived his remedy by not pursuing it in the state court proceeding.

**4.** The Fifth Amendment is applied to the states by the Fourteenth Amendment.  *Chicago, B. & Q.R.R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

**5.** Defendants do not contest that Moore has exhausted all of the remedies available to him under state law.  *Compare MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Williamson County Regional Planning Comm'n. v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

**6.** In *Martino,* the property at issue " 'had[d] been deprived of all of its reasonable beneficial economic uses and its economic return and marketability,' " 703 F.2d at 1144.

**7.** At oral argument on the motion to dismiss, Moore contended that the City's action had effectively denied him all use of his property during the pendency of his state court lawsuit. After the Court pointed out that the complaint and the record of the state court action (which Moore appended to the complaint) revealed that this was not so, Moore conceded at the motion for a new trial that he had had use of the two houses during the period at issue.

**1452**

S.Ct. 318, 326–27, 62 L.Ed.2d 210 (1979). The proper focus is on Moore's entire parcel of land, and it is clear that the city's condition did not constitute a taking of Moore's entire parcel.

Moore does not allege any actual physical invasion of his property; rather, he alleges a regulatory taking. *Compare Loretto v. Teleprompter Manhatten CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).[8] It is settled that government regulation does not constitute a taking merely because it affects the value of a property. *See Agins*, 447 U.S. at 263 n. 9, 100 S.Ct. at 2143 n. 9; *Danforth v. United States*, 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939).[9] Regulation only constitutes a taking if it " 'denies an owner economically viable use of his land' " or if it " 'interfere[s] with reasonable investment backed expectations' " in that use. *DeBenedictis*, 107 S.Ct. at 1247 (citations omitted) (holding that Pennsylvania's anti-subsidence act limiting the operation of coal mines did not effect a taking).[10] The appellant in *First Church* successfully pled this; Moore has not and cannot. He pleads that the expense of building his improvements increased during the delay and that he lost the use of the improvements for the period of the delay. These losses do not rise to the level of an unconstitutional taking. *See DeBenedictis*, 107 S.Ct. at 1247. Therefore, Moore's complaint fails to state a claim and his motion for a new trial must be denied.

IT IS THEREFORE ORDERED that plaintiff's motion for a new trial is denied.

---

**8.** *Nollan*, 107 S.Ct. 3141, like this case, involved a governmental body's attempt to acquire an easement over part of a parcel of real estate in return for permitting the landowners to develop the remainder of the parcel. Also like this case, the governmental body's condition of development was not reasonably related to the burdens imposed by the new development, and as a result constituted an unconstitutional taking unless the owners were paid just compensation. However, the landowners in *Nollan* did not assert that they were entitled to damages for the period of time prior to the invalidation of the ordinance, and the Supreme Court did not indicate that they were entitled to such damages. The Court held only that the permanent imposition of the condition at issue would constitute a taking without just compensation, *id.* at 3146–48. In any case, without the requested building permits, the landowners in *Nollan* were apparently deprived of any use of the property (the

only building on the property had become uninhabitable), unlike Moore in this case. *Id.* at 3143.

**9.** Were this not the case, not only would all zoning ordinances constitute takings, so too would government decisions concerning spending, taxation, and money supply, all of which can and do affect the value of real estate.

**10.** The standards applied in *DeBenedictis* are well-settled law. *See Hodel v. Virginia Surface Mining and Reclamation Ass'n., Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed. 2d 631 (1978).