Robert L. MITCHELL and Martha C. Mitchell, Plaintiffs,

v.

MILLS COUNTY, IOWA; Mills County Board of Supervisors, and Mills County Engineer, Defendants.

Civ. No. 86–54–W.

United States District Court, S.D. Iowa, W.D.

Oct. 26, 1987.

Eric H. Leed, Council Bluffs, Iowa, for plaintiffs.

Lee H. Gaudineer, Carlton Salmons, Des Moines, Iowa, for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on a motion for summary judgment filed by defendants. Briefs were submitted on behalf of each party, and a hearing was held before the Court. For the following reasons, the Court grants the defendants' motion for summary judgment with regard to the plaintiffs' due process claim and dismisses the plaintiffs' takings claim without prejudice for want of subject matter jurisdiction.

The plaintiffs own real estate located in Mills County, Iowa, on the west side of Mills County Road L–31. According to the plaintiffs' complaint, in 1981 Mills County, the County Board of Supervisors and Mills County Engineer Jerry W. Hare changed the route by which surface waters drained from property north of the plaintiffs' land alongside road L–31 so that surface runoff now drains freely onto the plaintiffs' property. Some of the runoff which now drains onto the plaintiffs' land originates from the

Aidex Corporation site, which has been high on the Superfund toxic substances cleanup list.[1] Runoff also originates from a cattle feed lot.

Plaintiffs filed their action in this court on July 24, 1986. Their only cause of action is 42 U.S.C. § 1983. They allege that by altering the drainage pattern along county road L–31 in such a fashion as to deposit all surface waters on the plaintiffs' property, the defendants deprived them of property without due process of law and denied them of the enjoyment and value of their property. The defendants and the Court construe these allegations to include a claim that the defendants took their property without just compensation, in violation of the Takings Clause of the Fifth Amendment as incorporated under the Fourteenth Amendment. Plaintiffs also contend that the defendants acted maliciously and recklessly with an intent to harm them.

## I. Procedural Due Process.

In their motion for summary judgment, the defendants contend that the plaintiffs' procedural due process claim is invalid as a matter of law because they failed to substantiate their allegations that the defendants acted maliciously and have failed to allege that an "affirmative abuse of power" occurred. The defendants further contend that post-deprivation remedies under Iowa tort law provide the plaintiffs with all process which may be due to them under the Due Process Clause. The plaintiffs respond that because the defendants' actions are alleged to have been malicious and reckless, the cases cited by the defendants do not apply, and summary judgment is not warranted.

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the United States Supreme Court established that post-deprivation remedies provided under state tort law satisfy the procedural requirements of the Due Process Clause

---

1. Problems at the Aidex site have given rise to another action in this court in which the Environmental Protection Agency seeks to recover its cleanup costs from companies which sent their pesticides to Aidex for formulation. *Unit-ed States v. Aceto Agricultural Chemicals Corp., et al.,* Civil No. 87–21–W. If the plaintiffs have not already done so, they contact the EPA to determine whether they may be entitled to any assistance under the Superfund Act.

where the plaintiffs' loss of property is the result of a random and unauthorized act.[2] 451 U.S. at 541, 101 S.Ct. at 1916. Although *Parratt* involved a negligent deprivation, the doctrine was extended to cover intentional deprivations in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See also Rheuport v. Ferguson*, 819 F.2d 1459, 1465 n. 10 (8th Cir.1987). Therefore, if the plaintiffs' injuries resulted from random and unauthorized acts, *Hudson v. Palmer* would bar relief under the procedural component of the Due Process Clause.[3]

However, it is not clear that the plaintiffs' injuries resulted from a random and unauthorized act. The sequence of events leading up to the actions which changed the drainage pattern, as set out in the affidavits of the plaintiff and the county engineer, suggest that the changes were undertaken with county authority and were not done randomly. The distinguishing feature of losses resulting from random and unauthorized actions is that "the state cannot predict when that loss will occur," so that "predeprivation procedures are simply impracticable." *Hudson*, 468 U.S. at 532–33, 104 S.Ct. at 3203. Because it may not have been impossible or impracticable in this case for the county to have provided some kind of process before changing the drainage pattern, *Hudson* is not dispositive.

Under two more recent Supreme Court decisions, the Court must determine in every due process case whether the conduct in question was no more than "a negligent act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). *See also Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). If so, no "deprivation" in the constitutional sense has taken place, even if the negligent conduct was authorized. In this case the

plaintiffs have *alleged* that the defendants acted maliciously and recklessly with intent to harm them. However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In response to a sworn statement from the county engineer denying that he or any other defendant intended to drain greater amounts of water onto the Mitchells' property than before the reconstruction of the drainage system, the plaintiffs have submitted an affidavit signed by Plaintiff Robert Mitchell which states in relevant part:

16. Since 1982, Mills County officials have not worked with me "cooperatively." I believe that my initial reluctance to cooperate with the proposed drainage district has caused other land owners to harbor ill will towards me. I further believe that the Mills County officials have assisted the other land owners in an effort to alleviate the water problems of the other land owners along county road L–31 to my detriment. I believe that this attitude continues as evidenced by the Mills County engineer's affidavit in support of the defendants' motion for summary judgment in this matter.

(Affidavit of Robert L. Mitchell at 5). The Court believes that these statements, even if true, do not successfully rebut the defendants' motion by establishing a triable issue of fact concerning the defendants' intent. At most, ¶ 16 establishes that the defendants became instruments of the ill will of the plaintiffs' neighbors. It does not provide a suitable basis for a reasonable trier of fact to conclude that the named defendants intended to harm the plaintiffs. For this reason, *Daniels*, *Davidson* and *Liberty Lobby* require the Court to grant the defendants' motion for

---

**2.** The opposite of a random and unauthorized act is an act taken pursuant to an established state procedure. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *Parratt* does not apply to the latter type of actions.

**3.** There is nothing in the plaintiffs' complaint which could be construed to allege a deprivation of substantive due process. *See Littlefield v. City of Afton*, 785 F.2d 596 (8th Cir.1986).

summary judgment with regard to the due process claim.[4]

## II. Takings Claim.

■ The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. Amend. V. This prohibition has been incorporated to apply to the states through the Due Process Clause of the Fourteenth Amendment. *See Chicago, B. & Q. Railroad Co. v. City of Chicago,* 166 U.S. 226, 235–41, 17 S.Ct. 581, 584–86, 41 L.Ed. 979 (1897).

By its terms, the Fifth Amendment does not flatly proscribe the taking of property; rather, it proscribes "taking without just compensation." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). Under a doctrine enunciated by the Supreme Court in the *Williamson* case, a taking does not become a "taking without just compensation" until the alleged victim uses any reasonable, certain and adequate provisions for obtaining compensation which exist at the time of the taking, and fails to receive just compensation. *Id.* This doctrine was anticipated by the Eighth Circuit in *Collier v. City of Springdale,* 733 F.2d 1311, 1313 (8th Cir.1984), and has been followed in *Harrison v. Springdale Water and Sewer Commission,* 780 F.2d 1422 (8th Cir.1986), and *Harris v. Missouri Conservation Commission,* 790 F.2d 678 (8th Cir.1986).

*Williamson* does not impose an exhaustion requirement in the traditional sense. Rather, the requirement that plaintiffs must first go to state court rests upon a broad reading of the term "just compensa-

tion," and reflects a belief by the U.S. Supreme Court that victims of takings should not expect governments to come looking for them with compensation and should not allege an unconstitutional taking without first attempting to use existing adequate mechanisms to seek compensation. This rule is "analogous, although imperfectly so, to the Supreme Court's holding in *Parratt v. Taylor." Jacobs v. City of Minneapolis,* No. 4–87–397, slip op. at 9 (D.Minn. Aug. 4, 1987) [Available on WESTLAW, 1987 WL 14716]. Unlike *Parratt,* however, the inadequacy of the state's post-deprivation remedy can be demonstrated through its use, and a takings claim can ripen when the compensation received by the plaintiff after exhausting existing state procedures fails to be "just" under constitutional standards. *See, e.g., Nollan v. California Coastal Commission,* —— U.S. ——, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *First Evangelical Lutheran Church of Glendale v. County of Los Angeles,* —— U.S. ——, —— n. 6, 107 S.Ct. 2378, 2384 n. 6, 96 L.Ed.2d 250 (1987) (state court's dismissal of plaintiff's inverse condemnation claim shows that inverse condemnation procedure is unavailable, thereby ripening the plaintiff's constitutional claim). However, until a plaintiff pursues state law remedies, federal courts must assume that state courts will interpret state law in line with the Supreme Court's "fundamental constitutional commands" concerning just compensation. *Jacobs,* slip op. at 16.

■ The only remaining question for the Court to resolve is whether Iowa law provides a remedy to which the plaintiffs could resort in order to receive just compensation for any taking by the defendants. The defendants submit that four remedies ex-

---

**4.** In so ruling, the Court does not attempt to decide whether "an affirmative abuse of power" occurred, even though the defendants contend this is the new test for any due process violation. While the Supreme Court treated the existence of an affirmative abuse of power as a common element in valid due process claims in *Daniels* and *Davidson,* that does not mean that courts can use it as a *test.* *The widely divergent views of Justice Rehnquist and Justice Blackmun in *Davidson* about what constitutes an af-

firmative abuse of power shows how slippery the term can become. This Court will treat this portion of *Daniels* in the same way in which it treats the Supreme Court's declaration that the First Amendment only protects speech—"as announcing a conclusion of the court, rather than as summarizing in any way the analytic processes which lead the court to that conclusion." L. Tribe, *American Constitutional Law* 600 (1978).

ist—a cause of action implied from Article I, § 18, of the Iowa Constitution, a mandamus action to compel the defendant to initiate condemnation proceedings, a condemnation action and a tort claim under the Municipal Tort Claims Act. Iowa Code § 613A (1987). The Court need not decide whether each of these remedies would be sufficient. It is enough to recognize that the cause of action implied from the Iowa Constitution should provide a remedy which is as capable of providing just compensation for any taking as those considered adequate by the Eighth Circuit in other states.[5] *See, e.g., Littlefield v. City of Afton*, 785 F.2d 596 (8th Cir.1986) (inverse condemnation proceeding to enforce similar clause in Minnesota Constitution deemed adequate). Therefore, no claim that the defendants took the plaintiffs' property without just compensation in violation of the U.S. Constitution will be ripe until the plaintiffs attempt to use this remedy and any other adequate remedy.

This Court will not retain jurisdiction over the takings claim because the Court cannot take jurisdiction over an unripened claim and because it is impossible for the Court to determine at this point whether the plaintiffs could reassert the takings claim in this court in the future. In *Paulucci v. City of Duluth*, 826 F.2d 780 (8th Cir.1987), plaintiffs who had failed to convince a state court in a condemnation proceeding that the city was taking their property for a non-public purpose subsequently filed a § 1983 takings claim in federal court. The Eighth Circuit ruled that the federal action was barred by both res judicata and collateral estoppel because the non-public purpose issue was considered and decided against them in the condemnation action. 826 F.2d at 784. In this case, the plaintiffs' federal takings claim will not be ripe until the state law claims are litigated, so res judicata would not bar the plaintiffs from bringing a federal takings claim later. However, if the Iowa court fully considers and resolves each particular issue which would be raised in a federal takings

claim, *Paulucci* might permit the defendants to collaterally estop the plaintiffs from relitigating those issues in federal court, even though they were first litigated in part of a state action. With this in mind, the plaintiffs should not litigate their action in state court for the sole purpose of showing that state remedies are inadequate, but should play to win.

 Because the Court lacks jurisdiction over the takings claim, it lacks jurisdiction to grant summary judgment to the defendants on that claim. *Lloyd v. State*, 251 N.W.2d 551, 559 (Iowa 1977). Instead, the Court must dismiss it without prejudice.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment is granted with regard to the plaintiffs' due process claim.

IT IS FURTHER ORDERED that the plaintiffs' takings claim is dismissed without prejudice for want of subject matter jurisdiction.

---

**5.** This should not imply that a state law takings claim is the claim most likely to produce compensation. Because a taking is generally more difficult to establish than a trespass or a nuisance, the plaintiffs should consider the full range of state law remedies.