John M. PEDUTO and El-Ro, Inc., Plaintiffs,

v.

CITY OF NORTH WILDWOOD, Defendant/Third Party Plaintiff,

v.

VAN NOTE-HARVEY ASSOCIATES, P.C., Third-Party Defendant.

Civ. A. No. 87-2914(SSB).

United States District Court, D. New Jersey.

Oct. 7, 1988.

Kenney & Kearney, Cherry Hill, N.J., for plaintiffs.

Savio, Reynolds & Drake by Steve Drake, Absecon, N.J., for defendant/third party plaintiff City of North Wildwood.

Cooper, Perskie, April, Niedelman, Wagenheim & Weiss, Atlantic City, N.J., for

third-party defendant Van Note–Harvey Associates, P.C.

## OPINION

BROTMAN, District Judge:

Presently before the court is the motion of defendant City of North Wildwood ("North Wildwood" or "the City") to dismiss plaintiffs' complaint on res judicata grounds or, in the alternative, for summary judgment on the merits. For the reasons stated in this opinion, the court will dismiss the complaint on res judicata grounds.

## I. FACTS AND PROCEDURE

In August 1985 North Wildwood imposed a sewer moratorium and construction ban based on a directive from the New Jersey Department of Environmental Protection. Plaintiffs John M. Peduto and El–Ro, Inc., were owners and developers of three residential condominium projects in North Wildwood with a total of forty-two individual condominium units. They allege that the City mislead them to believe sewer service would be available for their proposed projects, that they relied on those representations, and that the City failed to notify them before imposing the sewer moratorium and construction ban. Plaintiffs claim that the City should have imposed the moratorium fourteen months before it did, and by delaying the City deprived them of their property for at least eight months.

In July 1986 the plaintiffs filed a complaint against the City and three other defendants in the Law Division of the Superior Court of New Jersey for Cape May County ("the Cape May County action") raising five claims arising under state common law, 42 U.S.C. § 1983 (1982), and the federal and state constitutions: (1) the state and municipal defendants' actions constituted a taking of property and therefore they must pay compensation; (2) the state and municipal defendants' actions constituted a denial of procedural due process; (3) the state and municipal defendants' actions constituted a denial of substantive due process; (4) the state and municipal defendants breached a duty owed to the plaintiffs and therefore should pay damages pursuant to the New Jersey Tort Claims Act, N.J.Stat.Ann. §§ 59:1–1 to 12–3 (1982 & Supp.1988); and (5) the private defendant breached a duty owed to the plaintiffs and therefore should pay damages under common-law principles of negligence.

Several of the defendants, including North Wildwood, moved for summary judgment in the Cape May County action. In a lengthy opinion, Judge Callinan granted the defendants' motions, *Peduto v. City of North Wildwood*, No. L–068803–86, slip op. (Super.Ct.Law Div.Cape May Cty. Mar. 19, 1987), and issued an order dismissing plaintiffs' complaint against the City and other defendants with prejudice. *Peduto v. City of North Wildwood*, No. L–068803–86, order (Super.Ct.Law Div.Cape May Cty. May 11, 1987). Judge Callinan's opinion addressed at length the plaintiffs' three federal claims. Slip op. at 6–14.

In the present action the plaintiffs raise three federal claims arising under the United States Constitution and section 1983: (1) the City's action constituted a taking of property and therefore it must pay compensation; (2) the City's action constituted a denial of procedural due process; and (3) the City's action constituted a denial of substantive due process. North Wildwood now moves to dismiss the plaintiffs' complaint on res judicata grounds, or, in the alternative, for summary judgment on the merits.

## II. DISCUSSION

■ Defendant invokes the principle of res judicata to argue for dismissal of the plaintiffs' complaint. Res judicata has both a broad and a narrow meaning: Some authorities use the term to identify the general notion that a prior lawsuit has a preclusive effect in a future action between the parties who litigated the prior case; others use it to identify claim preclusion, one of two main branches of the general preclusion concept (the other branch is issue preclusion, which includes the doctrine of collateral estoppel). *See generally* 18 C.

Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4402 (1981 & Supp.1987) [hereinafter C. Wright]. North Wildwood apparently uses the term to mean claim preclusion, and it argues that because the plaintiffs have brought their three federal constitutional claims against it in the Cape May County action and lost after the parties litigated the issues and the court rendered a judgment on the merits, the judgment in that case precludes any future action based on those claims. In response, the plaintiffs contend that claim preclusion cannot apply to their claims in this court because their unique position requires an exception to the usual preclusion rules. The court finds that although federal law may prohibit claim preclusion from operating to prevent a party from choosing federal forum, issue preclusion nonetheless bars relitigation of the federal questions actually litigated and determined in the Cape May County action.

 The court will address the preclusion issue by analyzing both the claim preclusion and issue preclusion aspects of the defendant's motion. But before proceeding, a brief discussion of the scope of these two branches of the preclusion doctrine will be helpful. A useful starting point is the Supreme Court's synopsis of the two concepts:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (citing Restatement (Second) of Judgments § 27 (1982)). However, the distinction between the concepts is less clear than this quotation indicates. Claim preclusion, itself sometimes labelled res judicata, stresses the importance of the prior court's judgment: " 'It treats a judgment, once ren-

dered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." ' " 18 C. Wright, *supra,* § 4402, at 7 (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978)). Thus, while claim preclusion prohibits a second court to consider matters that should have been litigated but never were, it also serves to bar matters stemming from the same claim that have been litigated. Issue preclusion, sometimes called collateral estoppel, stresses the importance of the prior court's record: Issue preclusion " 'recognizes that suits addressed to particular claims may present issues relevant to suits on other claims ... [and it] bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties.' " *Id.* (quoting *Kaspar Wire Works*, 575 F.2d at 535–36). *See generally* J. Friedenthal, M. Kane & A. Miller, *Civil Procedure* § 14.2 (1985) [hereinafter J. Friedenthal].

 Where two actions are brought on the same claim but for some reason claim preclusion does not apply, issues actually litigated and determined in the first action nonetheless have preclusive effect; this subbranch of issue preclusion is called direct estoppel. *See* C. Wright, *supra,* § 4418. Although direct estoppel is an issue-based rather than a claim-based notion, it conceptually overlaps with claim preclusion in the sense that both doctrines in effect prevent relitigation of a claim or issue actually litigated and decided in a prior action. To simplify matters, the court will refer to this concept as falling under the rubric of issue preclusion and will address its applicability to the defendant's motion after the following discussion of the applicability of claim preclusion principles.

### A. *Claim Preclusion*

[5] In general, federal courts must honor the judgment of a state court to the same extent that the court that entered the judgment would honor it. *See* 28 U.S.C. § 1738 (1982); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S.

373, 380–81, 105 S.Ct. 1327, 1331–1332, 84 L.Ed.2d 274 (1985); 18 C. Wright, *supra,* § 4469, at 659–61 & n. 1. Therefore, unless the Constitution or federal statute dictates otherwise, New Jersey law determines the effect of the Cape May County judgment in this court. For claim preclusion to apply, there must be an identity of causes of action, parties, and issues. *Eatough v. Board of Medical Examiners,* 191 N.J.Super. 166, 173, 465 A.2d 934 (App.Div. 1983). Furthermore, the prior judgment must have been valid, *Massie v. Erie R.R. Co.,* 196 F.2d 130, 134 n. 12 (3d Cir.1952) (applying New Jersey law), final, *see Andersen v. Well–Built Homes,* 69 N.J.Super. 246, 254, 174 A.2d 216 (App.Div.1961), and on the merits. *See Central R.R. Co. v. Neeld,* 26 N.J. 172, 177, 139 A.2d 110, *cert. denied,* 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958). The court finds that North Wildwood has met its burden of establishing the existence of these elements.

### 1. Identity of Causes of Action, Parties, and Issues

There is no question that the present action and the Cape May County action involve the identical causes of action, parties, and issues. The plaintiffs' federal court complaint is almost identical to its complaint in the Cape May County action, except that it named only North Wildwood as a defendant before this court and it eliminated its state-law tort claims. The plaintiffs present the same federal constitutional causes of action before this court that they presented to Judge Callinan. In addition, the parties before this court are the identical parties that were before Judge Callinan (although there were additional defendants in the Cape May County action). Finally, because the law, the facts, and the claims are the same as in the previous action, the pleadings in this case present the same issues that the parties presented in the Cape May County action.

### 2. Validity of the Prior Judgment

■ The plaintiffs do not challenge the validity of the judgment in the Cape May County action. A judgment is valid if the court entering it had the power to hear the case and bind the parties. *Massie v. Erie R.R. Co.,* 196 F.2d 130, 134 n. 12 (3d Cir. 1952) (applying New Jersey law); J. Friedenthal, *supra,* § 14.7, at 641–42. The question of the first court's power to decide a controversy translates into two issues: (1) did the court have subject matter jurisdiction; and (2) did the court have proper jurisdiction over the parties? *Id.* at 642. The Superior Court entertained the plaintiffs' federal constitutional and civil rights causes of action pursuant to its general subject matter jurisdiction, N.J. Const. art. 6, § 3, ¶ 2, and had jurisdiction over the parties, and consequently it entered a binding judgment.

### 3. Finality of the Prior Judgment

■ A judgment becomes final for claim preclusion purposes once the time for appeal has expired. *Hodgson v. Applegate,* 31 N.J. 29, 43, 155 A.2d 97 (1959). The plaintiffs had forty-five days to appeal from Judge Callinan's decision, N.J.Ct.R. 2:4–1 (1988), and the record indicates that they did not appeal. Consequently, the judgment in the Cape May County action is sufficiently final to have preclusive effect.

### 4. Whether the Prior Judgment Was on the Merits

■ To have preclusive effect, a judgment must be "on the merits" rather than on some technical procedural ground. *Longo v. Reilly,* 35 N.J.Super. 405, 410, 114 A.2d 302 (App.Div.1955), *certif. denied,* 25 N.J. 45, 134 A.2d 540 (1957); *see also* J. Friedenthal, *supra,* § 14.7, at 650–51. Disposition by summary judgment is on the merits because in ruling on the motion the court examines the legal validity of the parties' claims. *Martucci v. Mayer,* 210 F.2d 259, 260–61 (3d Cir.1954) (applying New Jersey law); *see also* Restatement (Second) of Judgments § 19 comment g (1982). In the Cape May County action the parties fully litigated the federal constitutional issues and Judge Callinan carefully evaluated the merits of their arguments in his written opinion.

## B. An Exception to Claim Preclusion

Plaintiffs claim their case falls into an exception to the usual rules of claim preclusion, although they fail to articulate the precise nature of that exception. Their argument rests on two premises, one that they have stated in their opposition papers and one that is implicit in their argument: (1) their federal claims did not mature until they first brought a state inverse condemnation proceeding; and (2) therefore they should be able to bring their federal claims in a federal district court once those claims ripen (presumably even if they litigated those very claims in the state proceeding). Plaintiffs' argument raises an interesting legal question: Should the usual principles of claim preclusion apply where a plaintiff claiming an unconstitutional taking must file in state court to seek state-law inverse condemnation remedies before his federal constitutional claim ripens?

### 1. Plaintiffs Do Not Have Access to a Federal Forum of First Instance

Plaintiffs argue that under *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), they must follow proper state procedures for inverse condemnation before their federal constitutional takings claim can ripen. In *Williamson* the Court held that the plaintiffs could not maintain a federal takings action until they first followed the existing state procedures for seeking compensation. *Id.* at 194–96, 105 S.Ct. at 3120–21. The Court reasoned that Tennessee's allegedly unconstitutional act was not complete—and hence actionable—until it deprived property owners of due process of law, and a post-deprivation inverse condemnation proceeding is sufficient to satisfy due process requirements. *Id.* at 195, 105 S.Ct. at 3121. In *Williamson* the state had a statutory inverse condemnation procedure for property owners to follow to claim compensation. However, the First Circuit has held that compensation clause claims are premature prior to state court action even where state law provides only a sketchy common-law inverse condemnation procedure. *Cule-*

*bras Enters. Corp. v. Rivera Rios*, 813 F.2d 506, 512–16 (1st Cir.1987).

New Jersey's inverse condemnation procedures are not codified although they find their origin in the state's eminent domain statute, N.J.Stat.Ann. §§ 20:3–1 to –50 (Supp.1988). Under state common law, there exists an appropriate procedure when a governmental entity with eminent domain power has taken property but has not given compensation. *See In re Jersey Central Power & Light Co.*, 166 N.J.Super. 540, 544, 400 A.2d 128 (App.Div.1979). Such an action is based on an alleged violation of state and federal constitutional just compensation guarantees. *Id.* The proceeding is essentially a mandamus action to compel the government entity involved to initiate condemnation procedures. *Id.* "At issue in such a proceeding is whether the actions of the entity vested with condemning power in its impact on the owner's land constitutes a taking thereof." *Id.* Because New Jersey allows plaintiffs such a post-deprivation remedy, they had to invoke the mandamus procedure before filing an action in federal court.

Because a plaintiff first must go to a New Jersey court of general jurisdiction to invoke state compensation procedures, that court must pass on the question of whether there was a taking under state (and perhaps federal) law. Under New Jersey claim preclusion principles, the state court's finding on the plaintiff's claim would prevent it from bringing a second action on the grounds that it should have joined such a claim with its state mandamus action. *See Melikian v. Corradetti*, 791 F.2d 274, 279–80 (3d Cir.1986) (applying New Jersey law); *Joan Ryno, Inc. v. First Nat'l Bank*, 208 N.J.Super. 562, 569–70, 506 A.2d 762 (App.Div.1986); *see also* N.J. Ct.R. 4:27–1(b) (1988). The rule effectively prevents a plaintiff from ever filing a constitutional takings action in a federal district court and would allow the plaintiff a federal forum only in the United States Supreme Court. If such a plaintiff files first in federal court, the court will dismiss the federal claim as premature; however, if the plaintiff files first in state court, New Jersey's entire-controversy doctrine re-

quires the plaintiff to assert all related claims, including its federal constitutional claims. *See Paulucci v. City of Duluth,* 826 F.2d 780 (8th Cir.1987) (claim preclusion applies to bar federal takings action based on state court's inverse condemnation proceeding); *Moore v. City of Costa Mesa,* 678 F.Supp. 1448, 1450–51 (C.D.Cal. 1987) (same); *Mitchell v. Mills County,* 673 F.Supp. 332, 336 (S.D.Iowa 1987) ("plaintiffs should not litigate their action in state court for the sole purpose of showing that state remedies are inadequate, but should play to win"), *aff'd,* 847 F.2d 486 (8th Cir.1988). *But see Norco Constr., Inc. v. King County,* 801 F.2d 1143, 1146–47 (9th Cir.1986) (federal damages action not barred under Washington law by earlier state mandamus proceeding in which plaintiff could not have recovered all damages sought in its federal lawsuit).

2. New Jersey Claim Preclusion Rules Provide No Exception In This Instance

■ In every case in which a federal court seeks an exception to claim preclusion principles it must first look for that exception in state law. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 384, 105 S.Ct. 1327, 1334, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). Unlike the situation in *Marrese,* there are no circumstances that could arise between two state court proceedings that create a problem like that presently before the court. The compelling reason for an exception from the preclusion principle in this case arises from the unique relationship between the state and federal court systems. Finding that the plaintiffs have not established an exception to claim preclusion could have the effect of preventing other plaintiffs from ever bringing a federal takings claim in a federal district court. No New Jersey court has faced an application of claim preclusion in a situation even remotely similar. Moreover, it would be improper for this court to fashion a "New Jersey" rule creating an exception in this case; such a rule would in effect be a federal common-law exception and would

be inappropriate except in the circumstances discussed in the following section.

### 3. Federal Law May Require An Exception

■ As a result of the Supreme Court's recent pronouncements on the full faith and credit statute, 28 U.S.C. § 1738 (1982), "to avoid the application of state preclusion law, a federal court must find a violation of the due process clause or clear evidence of an intent by Congress expressly or impliedly to repeal [that] statute." Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law: A General Approach,* 71 Cornell L.Rev. 733, 797–98 (1986). Common sense indicates that a plaintiff who must file a state court action as a prerequisite to a federal constitutional action should, after the state court decision ripens his constitutional claim, be able to choose between a state or federal forum. However, to reach this result a court would have to find either that due process requires it or that the federal question jurisdiction statute, 28 U.S.C. § 1331 (1982), the civil rights statute, 42 U.S.C. § 1983 (1982), or some other statute impliedly repeals the full faith and credit statute as it applies in this situation.

The Supreme Court has made it clear that section 1983 does not operate to repeal the full faith and credit statute to allow a plaintiff to get a federal district court determination of her federal claims if she initially chooses a state forum. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). Nonetheless, that section could arguably limit section 1738's operation to the extent that it prevents civil rights plaintiffs from choosing between state and federal forums. Similarly, the federal question jurisdiction statute arguably limits section 1738's operation where not so limiting it would foreclose a litigant from a choosing a federal forum. In addition, the due process clause arguably prevents state law from interfering with a plaintiff's choice between a state or federal forum where either court would have jurisdiction.

In an analogous situation, the Supreme Court has explained that " '[t]he right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.' " *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 415, 84 S.Ct. 461, 464–65, 11 L.Ed.2d 400 (1964) (quoting *Wilcox v. Consolidated Gas Co.*, 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909)). In *England* plaintiffs filed a lawsuit in federal court alleging state and federal causes of action. The district court abstained, stayed the action, and directed the plaintiffs to pursue their state-law claims in state court. The plaintiffs raised all their claims, both state and federal, in the state court system. The Court held that claim preclusion could not apply where a plaintiff in such a situation specifically reserves his federal claims for decision on return to federal court.

■ Because *England* arose in the abstention context it remains good law despite the Supreme Court's recent narrow reading of section 1738. *See Migra*, 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7; *see also Kovats v. Rutgers*, 749 F.2d 1041, 1046–47 (3d Cir.1984). Where a plaintiff first invokes a federal court's jurisdiction and then brings his state-law questions to state court while specifically reserving his federal questions for federal adjudication, the state court never has the entire controversy in front of it. Consequently, section 1738 is not fully implicated and the federal court can ignore a state rule requiring a party to bring all of its claims relating to a single controversy. Although a plaintiff in state court for the sole purpose of ripening its federal constitutional claim should be able to escape that state's claim preclusion rules under the logic of *England*, present Supreme Court caselaw makes such a result difficult to reach.

Had the plaintiffs limited their Cape May County action to the question of whether that court should order the government defendants to conduct condemnation proceedings, the question of whether they had to raise their federal claims there would be squarely before the court. However, as discussed in the following section, even if the court were to find that claim preclusion should not apply where a plaintiff brings a mandamus action, plaintiffs' federal lawsuit is still precluded by direct estoppel because their federal claims were actually litigated and determined. The proper way for the plaintiffs to challenge application of New Jersey claim preclusion rules to their situation would have been to have sought mandamus from the Superior Court while specifically withholding or reserving any questions of federal law for a later federal court action. Because the court need not determine whether it can fashion an exception to claim preclusion in this case, it will leave the question of whether the due process clause, section 1331, or section 1983 limits the full faith and credit statute for another day or another court.

## C. *Issue Preclusion*

■ New Jersey law recognizes that "where a judgment of a court of competent jurisdiction directly determines a right, question or fact put in issue, such judgment estops the parties or their privies from thereafter relitigating the same issue in a subsequent proceeding between them, regardless of its nature or form." *Washington Township v. Gould*, 39 N.J. 527, 533, 189 A.2d 697 (1963); *accord Plainfield v. Public Serv. Elec. & Gas Co.*, 82 N.J. 245, 257–58, 412 A.2d 759 (1980). Where issue preclusion operates to prevent relitigation of an issue that a prior court previously passed upon even though that court's judgment does not preclude a second action on the same claim, the doctrine is called direct estoppel. 18 C. Wright, *supra*, § 4418. To apply issue preclusion a court must find that (1) the issue was actually litigated and determined by the prior court; (2) the prior court's judgment was valid and final; (3) the determination was essential to the prior court's judgment; and (4) the parties in the subsequent action are the same as those in the prior one. *Plainfield*, 82 N.J. at 258, 412 A.2d 759 (citing Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977)).

■ All of the elements necessary for this court to apply issue preclusion to the

federal questions litigated in the Cape May County action exist in this case. The Superior Court heard argument on and issued a written opinion regarding the three federal questions currently pending in this court. As discussed above, the Superior Court's judgment was valid and final. There is no dispute that the questions Judge Callinan decided were necessary to the Superior Court's judgment. Finally, as discussed above, the parties in the two actions are identical.

There is no state-law exception to issue preclusion applicable in this instance. In addition, although a federally created exception might properly apply where claim preclusion prevents a party from coming to federal court because she should have litigated her federal claim in the state mandamus proceeding but did not, such an exception would not be appropriate where a party actually litigated the federal issues in state court. The reason for such an exception is that the plaintiff would lose her chance to choose between a state or federal forum. Where the plaintiff has already litigated her federal claims in state court, she has made her choice.

Plaintiffs might have argued that New Jersey's entire-controversy doctrine compelled them to bring all their claims in the Cape May action and therefore the court should create an exception to issue preclusion as well, at least in their case. *See England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 422–23, 84 S.Ct. 461, 468–69, 11 L.Ed.2d 440 (1964) (prospectively requiring reservation of federal question for adjudication on return to federal court but in that case allowing plaintiffs to relitigate federal claims). However, such an argument would not be compelling. First, plaintiffs might have recognized that the principles of *England* could apply by analogy to their situation, and they could have attempted an *England*-like reservation of their federal questions. Second, if plaintiffs were aware that New Jersey law provides no appropriate exception to claim and issue preclusion, they might have sought a declaratory judgment from this court before proceeding with their state court action. Finally, the equities in this case do not justify creating a special exception for these plaintiffs.

Plaintiffs' Cape May County action was not simply an attempt to secure procedural due process. Rather, plaintiffs brought and fully litigated all their state and constitutional claims. They made no attempt to preserve their federal claims for a federal court; instead, they argued them before Judge Callinan and lost. The court therefore must apply direct estoppel and reject the plaintiff's claims because the issues that they raise have already been litigated and determined. *See Doerinkel v. Hillsborough Township*, 835 F.2d 1052 (3d Cir. 1987) (applying claim and issue preclusion to bar federal court constitutional takings action after plaintiff was unsuccessful in state court action); *Tancrel v. Mayor & Council*, 583 F.Supp. 1548 (D.N.J.1984) (same); *see also Griffin v. State of Rhode Island*, 760 F.2d 359 (1st Cir.) (applying "res judicata" to bar federal takings action following state condemnation proceeding and subsequent state court actions), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 111 (1985).

### III. CONCLUSION

The court must dismiss plaintiffs' complaint on the ground that, whether or not there is an applicable federal-law exception to issue preclusion, they made no attempt to preserve their federal issues for this court to decide. The plaintiffs have already litigated to judgment their federal-law claims in the Cape May County action and therefore they may not relitigate in this court the issues that those claims raise.

An appropriate order will be entered.

This matter having come before the court on defendant's motion to dismiss on res judicata grounds or, in the alternative, for summary judgment on the merits; and

The court having considered the submissions of the parties; and

For the reasons set forth in the court's opinion filed on this date;

IT IS on this 3rd day of October, 1988, hereby

ORDERED that defendant's motion to dismiss on res judicata grounds is GRANTED and the complaint is DISMISSED.

No costs.