**DELMARVA POWER & LIGHT COMPANY, Plaintiff,**

v.

**CITY OF SEAFORD, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 22, 1986.
Decided: Feb. 3, 1987.

Richard E. Poole, and Gregory A. Inskip, of Potter, Anderson & Corroon, Dale G. Stoodley, of Delmarva Power & Light Co., Wilmington, for plaintiff.

James A. Fuqua, Jr., City Sol., Seaford, for defendant.

MARTIN, Judge.

This is the Court's decision on defendant City of Seaford's ("Seaford") motion to dismiss this action in inverse condemnation.

The pertinent facts are as follows. On or about December 6, 1985, Seaford supplanted plaintiff Delmarva Power & Light Company ("Delmarva") as the supplier of electricity to the Seaford Wesleyan Church and Parsonage located in Sussex County, Delaware. On January 10, 1986, Delmarva filed this action claiming that Seaford had appropriated its franchise right, which had been granted by the State in order to afford Delmarva exclusive power to supply electricity. Seaford did not institute formal condemnation proceedings nor compensate Delmarva for the alleged taking of the affected part of the franchise. Delmarva seeks compensation based on a theory of inverse condemnation.

Seaford has filed this motion to dismiss the action on the grounds of improper venue. The defense of improper venue may be asserted by motion before a responsive pleading is filed. Superior Court Civil Rule 12(b).

Delmarva instituted this action in New Castle County. Seaford asserts that the case should properly be tried in Sussex County. In support of its position, Seaford initially contends that the statutory provisions of Delaware's condemnation laws apply equally to an action in inverse condemnation. Specifically, 10 *Del.C.* § 6102 requires that all condemnation proceedings within the State be commenced by filing a complaint in the Superior Court in and for the county where the property is located.

Authority on eminent domain, brought to the attention of the court, indicates that legal and practical differences do exist between suits in inverse condemnation and condemnation proceedings. This Court is unaware of authority that discusses the two actions in terms of their similarities.

In *United States v. Clarke*, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980) the Supreme Court teaches that inverse condemnation is a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *Id.* at 257, 100 S.Ct. at 1130. Alternatively, a condemnation proceeding is commonly understood to be an action brought by a condemning authority such as the government in the exercise of its power of eminent domain. *Id.* at 255, 100 S.Ct. at 1129.

In addressing the practical differences between an action in inverse condemnation and a condemnation proceeding, the Supreme Court in *Clarke* teaches that condemnation requires affirmative action on the part of the condemning authority, while inverse condemnation simply requires the

land to be occupied. Once the land has been occupied, the burden to discover the encroachment and recover just compensation is shifted to the landowner.

Additionally, the Supreme Court in *Clarke* noted that the choice of a condemning authority to take property by physical invasion rather than by a formal condemnation action may have important monetary consequences due to the different times utilized in ascertaining the value of the property in each.

"The value of property taken by a governmental body is to be ascertained as of the date of taking. *United States v. Miller*, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). In a condemnation proceeding, the taking generally occurs sometime during the course of the proceeding and thus compensation is based on a relatively current valuation of the land. See L. Orgel, *Valuation in Eminent Domain* § 21, n. 29 (2d ed. 1953). When a taking occurs by physical invasion, on the other hand, the usual rule is that the time of the invasion constitutes the act of taking, and '[i]t is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued....' *United States v. Dow*, 357 U.S. 17, 22, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958)." *Id.*, 445 U.S. at 258, 100 S.Ct. at 1130.

The distinction which has been pointed out by the Supreme Court in *Clarke* has also been recognized by Delaware Courts. See *City of Wilmington v. Lord*, Del.Super., C.A. No. 5388, Bifferato, J. (June 8, 1981). Although the Court in *Lord* did not explain when an inverse condemnation action is or is not governed by the condemnation statutes, it does indicate that the two types of actions may be treated differently. See also, *Roberts v. Delaware Solid Waste Authority*, Del.Super., C.A. No. 83A–AU, Martin, J. (Oct. 25, 1984).

This Court has not been directed to authority in which improper venue is discussed specifically in the context of eminent domain.

■ Federal venue cases do teach, however, that unless the balance of convenience or burden is strongly in favor of movant, plaintiff's choice of forum should not be disturbed and further that the moving party asserting a right of transfer has a heavy burden of establishing that a change of venue is warranted. *Coons v. American Horse Show Ass'n, Inc.*, S.D. Texas, 533 F.Supp. 398, 400 (1982). Stated differently, if the balance of inconvenience borne by the parties is equal or only slightly heavier for defendant, plaintiff's choice of forum should prevail. *American Tempering, Inc. v. Brady & Sun*, E.D.Pa., 630 F.Supp. 30, 31 (1985). In the case *sub judice*, Seaford has failed to make any argument regarding inconvenience but rather bases its claim of improper venue on the Delaware condemnation statute. 10 *Del.C.* § 6102. Furthermore, this Court finds that it would not be an inconvenience for Seaford to defend this action in New Castle County.

Aside from the differences between inverse condemnation and condemnation as explained by the applicable authorities, this Court notes the Legislature's failure to include inverse condemnation within the ambit of the condemnation statute.

Case law suggests that a condemnation proceeding is an action *in rem*. *Wilmington Housing Authority v. Nos. 500, 502, and 504 King Street*, Del.Super., 273 A.2d 280 (1970) aff'd. sub nom. *Ogden-Howard Furniture Co. v. Wilmington Housing Authority*, Del.Supr., 281 A.2d 484 (1971). It follows therefrom that the Legislature would provide for commencement of such action where the land at issue is located.

By enacting 10 *Del.C.* §§ 6101–6115, the Legislature has, in effect, superseded the general venue provision in Article I, Section 9 of the Constitution, as applied to condemnation proceedings. General principles of statutory construction suggest that had the Legislature intended that inverse condemnation actions be included within the statutory scheme it would have so provided.

Finally, the inherently unique nature of property is supportive of the Legislature's specific provision requiring a condemnation

action to proceed in the county where the land is located.

Seaford also asserts, in support of its position that 10 *Del.C.* § 6102 applies equally to condemnation proceedings and inverse condemnation actions, and further, that Delmarva's election to bring the action under Delaware's condemnation statute, 10 *Del.C.* Chapter 61, precludes it from selecting only those sections of the law which it deems favorable. Specifically, Seaford argues that Delmarva may not obtain a trial in Superior Court pursuant to 10 *Del.C.* § 6108 in order to determine compensation while ignoring 10 *Del.C.* § 6102 which requires that a condemnation proceeding be brought where the property is located.

■ Delmarva responds by citing *City of Wilmington v. Lord,* Supra., in which the court teaches that:

> "an inverse condemnation action ... is not necessarily governed by statutes pertinent to eminent domain or condemnation procedures." *Id.* at p. 9.

Such is interpreted by Delmarva as allowing condemnation statutes to be applied to actions in inverse condemnation on a piecemeal basis. Based on the context in which such statement was made, i.e., a discussion of the differences between an action in inverse condemnation and a condemnation proceeding, this Court interprets the statement to indicate that the statutes pertinent to eminent domain or condemnation procedures do not *as a whole* necessarily govern actions in inverse condemnation.

Based on the foregoing analysis, this Court concludes that for venue purposes, inverse condemnation and condemnation are separate entities. The lack of a venue statute specifically covering inverse condemnation requires examination of the constitutional provisions in the determination of whether venue is proper.

Article I, Section 9 of the Delaware Constitution read until 1977;

> "... every action shall be tried in the county in which it shall be commenced, unless when the judges of the court in which the cause is to be tried shall determine that an impartial trial thereof cannot be had in that county."

A constitutional amendment to this Article, however, in deleting the above provision, attempted to free the legislature of constitutional restraint in redefining requirements for change of venue. 60 *Del.Laws,* C. 519, 61 *Del.Laws,* C. 80 (May 31, 1977).

In *McBride v. State,* Del.Supr., 477 A.2d 174 (1984), the Court stated that the amendment "should be reasonably interpreted as intended to bring Delaware law on change of venue in accord with prevailing concepts of Sixth Amendment due process." In so doing, however, the Legislature effectively deleted the venue provision with respect to both civil and criminal cases. Thus, as to venue in civil cases, it is necessary to look to the common law.

In *Brandywine Mushroom Corporation v. Thompson,* Del.Super., 137 A.2d 746 (1958), a case decided prior to the 1977 constitutional amendment to Article I, Section 9, this Court concluded that the provision does apply to both civil and criminal actions and that a change of venue will not be granted unless it is first found that an impartial trial cannot be had in the County. In the case *sub judice,* Seaford has moved for dismissal due to improper venue but has failed to make the necessary showing regarding the impossibility of obtaining a fair trial.

Seaford's second contention in support of its motion to dismiss is that because this action is one *in rem,* it must be tried where the property is located. *Wilmington Housing Authority v. Nos. 500, 502 and 504 King Street,* Del.Super., 273 A.2d 280 (1970), aff'd. sub nom. *Ogden-Howard Furniture Co. v. Wilmington Housing Authority,* Del.Supr., 281 A.2d 484 (1971).

■ Delmarva concedes that a governmental condemnation proceeding is an action *in rem,* since the condemnor must name as defendants the property, designated generally by kind, quantity and location.... 10 *Del.C.,* § 6105(a). Seaford cites no authority in support of its position, but asserts that because the underlying rationale of a condemnation action being tried where the property is located is equally applicable to an inverse condemnation

action, the appropriate forum is Sussex County.

Delmarva in response asserts that inverse condemnation actions are not brought against property but are brought against the governmental body that has taken the property without just compensation, a view that this Court accepts.

 Based on the foregoing analysis, this Court concludes that Seaford has not shown why this Court is an "improper venue" to hear this action. Additionally this Court is not persuaded that an inverse condemnation action is a proceeding *in rem.* Defendant's motion to dismiss for improper venue is therefore DENIED.

IT IS SO ORDERED.