**Anne F. ABBISS and Robert L. Swift, Plaintiffs,**

v.

**DELAWARE DEPARTMENT OF TRANSPORTATION and Kermit H. Justice, Secretary of the Delaware Department of Transportation, Kermit H. Justice, Rodney S. Hill, Jr., and W. Robert Marker, Individually, Defendants.**

**Civ. A. No. 88–280 JRR.**

United States District Court, D. Delaware.

May 26, 1989.

Donald W. Booker, Wilmington, Del., for plaintiffs.

David S. Lank, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., for defendants.

## OPINION

ROTH, District Judge.

This action concerns property located at 322 Red Mill Road in New Castle County, Delaware (the "Property"). The plaintiffs bring this action under federal law seeking damages for an alleged taking of the Property, for an alleged restraint on alienation of the Property, and for alleged violations of their civil rights stemming from the individual defendants' actions concerning the Property. Presently before the Court is the defendants' Motion for Summary

Judgment. We will, however, *sua sponte* dismiss this action without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

## I. FACTS

Plaintiff Abbiss owns the property in controversy. From 1977 through January 30, 1988, plaintiff Swift was a commercial month-to-month tenant who leased the premises and ran the Seafood Barn store in the building located on the Property. The Property is the second property north of the present intersection of Routes 273 and 4 and Red Mill Road in the Ogletown area of Delaware (the "Intersection").

The action that the plaintiffs contest is the decision by the Delaware Department of Transportation ("Del DOT") to alter the Intersection so that Red Mill Road will terminate in a cul-de-sac and will no longer intersect with Routes 273 and 4. Construction of the cul-de-sac will result in no direct access from Red Mill Road to either Route 273 or Route 4.

Despite the fact that the final design did not require acquisition of the Property, Del DOT nevertheless entered into negotiations with the plaintiffs' attorney for its advance acquisition. In connection with this procedure, two appraisals of the Property and one of the machinery and equipment on the premises were made. Offers to purchase the Property, the machinery, and the equipment were made by Del DOT; each was refused by the plaintiffs' attorney on behalf of his clients. These offers have since been withdrawn and Del DOT's current position is that acquisition of the Property is not necessary for the project.

The plaintiffs filed this action on May 24, 1988, raising three counts. In Count I, the plaintiffs assert that Del DOT has, in effect, by implementing its plan to transform Red Mill Road into a cul-de-sac, taken the Property in controversy without just compensation in violation of the fifth and fourteenth amendments to the United States Constitution. In Count II, the plaintiffs assert a right based on federal law to recover damages for an alleged restraint on the right of alienation of the Property for a seventeen year period commencing with the first announcement of Del DOT's plan to alter the Ogletown Intersection in 1968 and terminating with the adoption of the final plan. In Count III, the plaintiffs charge under 42 U.S.C. section 1983 that the defendants Kermit H. Justice, Rod S. Hill, and Frank [sic] Marker violated the plaintiffs' civil rights by refusing to institute condemnation proceedings against the Property.

Significantly, there is no indication in the complaint or in any of the other papers docketed in this action that the plaintiffs have sought compensation for the alleged taking or for the acts relating to the alleged taking, through procedures established by the state of Delaware.

## II. ANALYSIS

The defendants have raised three arguments to support their Motion for Summary Judgment. We need not address any of these arguments, however, because we conclude that pursuant to the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), we do not have subject matter jurisdiction. *Williamson* requires that, before the plaintiffs can bring this action in federal district court, they must first seek compensation for the alleged taking by pursuing Delaware state law remedies. *Id.* at 194–96, 105 S.Ct. at 3120–22. Until they do so, we do not have subject matter jurisdiction. Therefore, this action will be dismissed without prejudice.

### A. *The Takings Claims.*

■ We first address the plaintiffs' claims that there has been a taking of the Property or a taking of an interest in the Property because of the alleged restraint on alienation. In relevant part, the fifth amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend V. This provision does not prohibit governments from taking private property, but merely requires compensation if property is taken. *E.g., First English Evangelical*

*Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314–16, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987); *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120; *Sinaloa Lake Owners Association v. City of Simi Valley*, 864 F.2d 1475, 1478–79 (9th Cir.1989); *Cassettari v. Nevada County*, 824 F.2d 735, 737 (9th Cir.1987); *Peduto v. City of North Wildwood*, 696 F.Supp. 1004, 1009 (D.N.J.1988); *Mitchell v. Mills County, Iowa*, 673 F.Supp. 332, 335 (S.D.Iowa 1987), *aff'd*, 847 F.2d 486 (8th Cir.1988). Only when government refuses to pay just compensation after a taking has occurred, can there be a constitutional violation under the fifth amendment, *Lutheran Church*, 482 U.S. at 312 n. 6, 107 S.Ct. at 2384 n. 6; *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120; *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir.1988); *Austin v. City and County of Honolulu*, 840 F.2d 678, 681 (9th Cir.1988); *Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817 (1st Cir.1987); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 512–16 (1st Cir.1987); *Littlefield v. City of Afton*, 785 F.2d 596, 609 (8th Cir.1986); *Mitchell*, 673 F.Supp. at 335; *Lerman v. City of Portland*, 675 F.Supp. 11, 15–16 (D.Me.1987), because there is no right that "just compensation be paid in advance of, or contemporaneously with," a taking. *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120. *See also id.* at 195 n. 14, 105 S.Ct. at 3121 n. 14 ("Nor has the Court ever recognized [under the just compensation clause] any interest served by pretaking compensation that could not be equally well served by post-taking compensation"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2879, 81 L.Ed.2d 815 (1984) (just compensation clause does not require pretaking compensation); *Cherokee Nation v. Southern Kansas Ry.*, 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295 (1890) (constitution does not require payment in advance of taking).

■■■ In the instant case, the plaintiffs' claims are premature because they have not attempted to pursue Delaware state law remedies for the alleged taking, *Lutheran Church*, 482 U.S. at 312 n. 6, 107 S.Ct. at 2384 n. 6; *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120; *Austin*, 840 F.2d at 681; *Ochoa Realty*, 815 F.2d at 817; *Culebras*, 813 F.2d at 512–16; *Littlefield*, 785 F.2d at 609; *Q.C. Construction Co. v. Verrengia*, 700 F.Supp. 86, 87 (D.R.I.1988); *Mitchell*, 673 F.Supp. at 335; *Lerman*, 675 F.Supp. at 15–16, and therefore cannot demonstrate that the state's available post deprivation remedies are inadequate.[1] *See, e.g., Williamson*, 473 U.S. at 194–95, 105 S.Ct. at 3120–21. Until the state fails to provide adequate compensation for the alleged taking, the state's action is not complete, *id.* at 195, 105 S.Ct. at 3121; there can be no taking; and there is no federal cause of action.

■■■ Even if Delaware law did not provide specifically for inverse condemnation actions[2] or even if every decision from the Delaware courts to have considered the issue of inverse condemnation had denied recovery to the plaintiff, that would not be enough to waive the requirement for the plaintiffs to pursue their state law remedies first. *See, e.g., Austin*, 840 F.2d at 681–82 ("despite the uncertainty of state law, even when state courts have expressed unwillingness to award damages in inverse condemnation actions," plaintiffs

---

**1.** We note here that the plaintiffs' restraint on alienation claim would also fail under the first prong of the *Williamson* analysis. In addition to holding that takings claims in federal court are premature unless state court remedies are pursued first, the Court in *Williamson* held that takings claims based on application of a regulatory scheme are not ripe until "the governmental entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186, 105 S.Ct. at 3116. In the instant case, there was no final action by the state of Delaware regarding alteration of the Intersection until the adoption of the federally approved plan in July of 1986. Therefore, a decrease in value of the Property, if any, as a result of rumors circulating from 1968 until July, 1986, regarding transformation of the Intersection is not a compensable injury. *E.g., id.; Sinaloa*, 864 F.2d at 1478; *Austin*, 840 F.2d at 679–80.

**2.** An inverse condemnation action is an action brought by a landowner for compensation after a taking has occurred.

must first bring their claims in state court); *Culebras,* 813 F.2d at 512–16 (same); *Littlefield,* 785 F.2d 609 (same); *Lerman,* 675 F.Supp. at 16 (same). The plaintiffs in this case do not face such an obstacle, however. The Delaware Constitution requires that compensation be paid when "any man's property be taken or applied to public use...." Del. Const. art. I, § 8, cl. 3. In addition, Delaware law specifically provides for actions in inverse condemnation. Del. Code Ann. tit 29, § 9504. Finally, a brief research of Delaware law indicates that inverse condemnation actions will be entertained by the Delaware courts. *See, e.g., Goldberg v. City of Rehoboth Beach,* slip op. (Del.Super.Ct. Feb. 8, 1989) (denying plaintiff's inverse condemnation claim because no showing that there had been a taking) [1989 WL 12236]; *Delmarva Power & Light Co. v. City of Seaford,* 523 A.2d 973 (Del.Super.Ct.1987) (holding that plaintiff brought inverse condemnation action in the proper county); *Scott v. City of Harrington,* slip op. (Del.Super.Ct. May 15, 1987) (denying defendant's motion to dismiss plaintiff's inverse condemnation suit seeking just compensation) [1987 WL 11461]. Thus, it is clear that Delaware law provides remedies for takings of property by government.

The plaintiffs in this case must therefore pursue their claims in state court and be denied relief[3] before they can bring their claims in federal court. *See, e.g., Williamson,* 473 U.S. at 194–200, 105 S.Ct. at 3120–24. This precondition of bringing suit in state court before suit may be brought in federal court serves well both the notions of comity between the state and federal courts and the notion of "Our Federalism." *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). As the court in *Mitchell* stated, "[U]ntil a plaintiff pursues state law remedies, federal courts must assume that state courts

will interpret state law in line with the Supreme Court's 'fundamental constitutional commands' concerning just compensation." 673 F.Supp. at 335 (quoting *Jacobs v. City of Minneapolis,* No. 4–87–397. slip op. at 16 (D.Minn. Aug. 4, 1987) [1987 WL 14716]).

Because the plaintiffs have not pursued the available state law remedies with respect to their takings claims, these claims are not ripe, and we do not have jurisdiction over them. These claims will therefore be dismissed.

B. *The Civil Rights Claims.*

We now turn to the plaintiffs' civil rights claim against the defendants. The Complaint charges the individual defendants with violating the plaintiffs' civil rights by failing to institute condemnation proceedings against the Property and by "knowingly, wantonly and willfully depriv[ing] the owner of just compensation under the constitutional provisions of the United States Constitution" for the alleged taking of the Property. Complaint ¶ 10 (D.I. 1). We view these vaguely-worded allegations as being brought under section 1983 for alleged violations of rights protected by the fifth and fourteenth amendments to the United States Constitution.

Our analysis of the civil rights claims must begin with the statute itself. Section 1983 of title 42 of the United States Code provides:

Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to succeed on a claim based on section 1983, the plaintiffs must demon-

---

**3.** Difficult issues of claim and issue preclusion are raised by an action in state court, however. The plaintiffs' counsel is urged to research carefully the applicable law so that if, in a possible state court action, the plaintiffs want to preserve their federal causes of action they are not lost due to inartful pleading. For a logical and

well-reasoned discussion of the interplay between state and federal law in this area, Judge Brotman's opinion in *Peduto v. City of North Wildwood,* 696 F.Supp. 1004, 1009–12 (D.N.J. 1988) (examining New Jersey state law and federal law), is helpful.

strate two elements. First they must show that they have been deprived of a right secured by the constitution or laws of the United States. Second, they must show that the person depriving them of this right acted under color of state law. *E.g., Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930–32, 102 S.Ct. 2744, 2750–51, 73 L.Ed.2d 482 (1982). At this juncture in this case, it is impossible to demonstrate that the plaintiffs have been deprived of anything. There has been no finding in this case that there has been a taking of the Property or of any interest in the Property in violation of the fifth and fourteenth amendments. As a result, we find that it would be premature to rule on these civil rights claims until the state courts have resolved whether or not there has been a taking and, if so, what remedy is available to the plaintiffs. *E.g., Cassettari,* 824 F.2d at 739.

Based on our holding with respect to the takings issue, we conclude that the plaintiffs' civil rights claims cannot at this time be based on the fifth amendment because the plaintiffs have not yet been denied just compensation for the alleged taking of the Property. Thus, the plaintiffs have not been deprived of a right conferred by the fifth amendment. *Williamson,* 473 U.S. at 194–97 & n. 13, 105 S.Ct. at 3120–22 & n. 13.

▮ Nor can we treat the plaintiffs' claim that their civil rights have been violated as one which is based on violations of the fourteenth amendment's requirement of substantive due process. It is well-settled law in this circuit that a "plaintiff making a substantive due process claim in federal court has the burden of showing that the regulation is arbitrary or irration-

al." *Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023, 1035–37 (3d Cir. 1987) (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)); *see also Sinaloa,* 864 F.2d at 1484; *Coniston,* 844 F.2d at 467. The plaintiffs in this case have made no showing that Del DOT's decision to alter the Intersection was arbitrary or irrational. Further, the only allegation that could arguably support a claim of violations of substantive due process, that Del DOT's decision not to purchase the Property was arbitrary or irrational, is unsupported by anything other than bare-faced assertions in the complaint.[4] This is insufficient to support a claim of violation of substantive due process. *Pace Resources,* 808 F.2d at 1035 (citing *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir.1976); *Boykins v. Ambridge Area School District,* 621 F.2d 75 (3d Cir.1980)).

▮ Because the plaintiffs' section 1983 claim cannot be predicated either on the fifth amendment's just compensation clause or on the fourteenth amendment's requirement of substantive due process, the only other basis for the plaintiffs' claim would be a violation of procedural due process. Even, however, if we view the facts most favorably to the plaintiffs with respect to this claim, that there has indeed been a taking of the Property or of an interest in the Property without just compensation, such a conclusion does not enable the plaintiffs to sustain this cause of action. Mere exercise of eminent domain power does not offend due process. *Chicago, Burlington & Quincy Railroad Co. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *Elterich v. City of Sea Isle City,* 477 F.2d 289, 290 (3d Cir.1973);

---

**4.** Further, we consider that Del DOT's activities with respect to advance acquisitions involved primarily basic contract law principles. Del DOT negotiated with the plaintiffs, made offers which were refused, and then withdrew the offers once they determined that the Property was not needed for the Intersection as finally designed. We think it would be difficult to term an offeror's withdrawal of an offer as arbitrary when the reason for the offer being made in the first place had disappeared.

The fact that Del DOT may have acquired other properties under its advance acquisition scheme, which properties are not presently needed for construction of the Intersection as finally designed, does not alter our conclusion. The purpose of advance acquisition is to purchase properties in anticipation that the property will be needed for future construction projects. That Del DOT may have made revisions or mistakes or may have been overly aggressive in acquiring other properties that are actually not now needed does not afford the plaintiffs any special right to have this Property acquired by the state.

*Collier v. City of Springdale,* 733 F.2d 1311, 1314 (8th Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984). The plaintiffs have no right to "prior notice, hearing or compensation so long as there exists an adequate mechanism for obtaining compensation." *Collier,* 733 F.2d at 1314 (citing *Yearsley v. Ross,* 309 U.S. 18, 22, 60 S.Ct. 413, 415, 84 L.Ed. 554 (1940); *Hurley v. Kincaid,* 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637 (1932); *Fountain v. Metropolitan Atlanta Rapid Transit Authority,* 678 F.2d 1038, 1045 n. 13 (11th Cir.1982); *Stringer v. United States,* 471 F.2d 381, 383 (5th Cir.), *cert. denied,* 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); *Light v. Blackwell,* 472 F.Supp. 333, 338 (E.D.Ark.1979), *aff'd mem.,* 620 F.2d 307 (8th Cir.1980); *Kao v. Red Lion Municipal Authority,* 381 F.Supp. 1163, 1166 (M.D.Pa.1974)); *see also Cassettari,* 824 F.2d at 738; *Mitchell v. Mills County, Iowa,* 847 F.2d at 488 n. 2; *Harris v. Missouri Conservation Commission,* 790 F.2d 678, 680 (8th Cir.1986); *Elterich,* 477 F.2d at 291;[5] *but see Sinaloa,* 864 F.2d at 1480–83 (a physical invasion case, where all of plaintiff's property was flooded as a result of breaching a dam, holding that only the just compensation clause does not require prior notice and implying that the due process clause would require prior notice). The constitution requires only that the plaintiffs be permitted to bring an inverse condemnation action if the government should choose not to exercise its power of eminent domain prior to the seizure of private property. *Collier,*

733 F.2d at 1314 (citing *Fountain,* 678 F.2d at 1043). As we have already found, Delaware recognizes sufficient post-deprivation procedures to compensate the plaintiffs assuming that a taking has actually occurred. These procedures preclude a finding that the Property has been taken in violation of a right, privilege or immunity secured by the constitution or laws of the United States. Since the alleged taking was not without "just compensation" or the means to obtain it, we hold that the plaintiffs have failed to state a claim under section 1983.[6] *E.g., Cassettari,* 824 F.2d at 739.

Because we conclude that the exercise of the power of eminent domain would not offend due process, we do not find the Supreme Court's decisions in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), or the Third Circuit's decision in *Stana v. School District of Pittsburgh,* 775 F.2d 122 (3d Cir.1985) or their progeny to require a different result. These cases held that post-deprivation remedies are sufficient when the loss of property is the result of random, unauthorized acts by a state employee but that post-deprivation remedies are inadequate for due process purposes when property interest are lost as a result of an established government procedure. First, these cases speak only to the process that is due upon deprivation of personal property or of em-

---

5. Although the Third Circuit has not specifically addressed this issue since *Elterich,* we find that the court's reasoning in *Rogin v. Bensalem Township,* 616 F.2d 680 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), supports the court's earlier reasoning in *Elterich.* In *Rogin,* with respect to the issue of whether individuals had the right to due process protections prior to the passage of zoning regulations, the court stated:

> To provide every person affected by legislation the various rights encompassed by due process—including hearings, opportunity for confrontation and response, clear standards, an impartial arbiter, and possibly judicial review—would be inconsistent with the structure of our system of government. The act of legislating necessarily entails political trading compromise, and ad hoc decisionmaking

which, in the aggregate, produce policies that at least approximate a fair and equitable distribution of social resources and obligations. 616 F.2d at 693.

6. For example, if Del DOT's actions do not amount to a taking of the Property or of any interest in the Property, then it would be illogical to find that the defendants violated the plaintiffs' procedural due process rights by failing to institute condemnation proceedings because there would have been no reason to do so. Likewise, in the situation where no taking has occurred, it would be illogical to find that the defendants violated the plaintiffs' due process rights by wantonly, willfully, and knowingly depriving the plaintiffs of just compensation because none would have been due.

ployment rights by government and not to the specific situation, addressed in *Williamson* and its progeny, where the government takes a landowner's real property. Second, assuming that these cases have some application, we find that even if Del DOT's decision to alter the Intersection was not random or unauthorized, but was the result of an established government procedure, any taking that may have occurred because of Del DOT's action was not the result of a "government program or process designed to infringe on property interests." *Mitchell*, 847 F.2d at 488 n. 2. The availability of a remedy through an inverse condemnation action obviates a finding at this stage of the case of a "design" by the defendants to infringe on the plaintiffs' property rights. Moreover, any effect upon the plaintiffs' property rights was caused by Del DOT's decision to alter the Intersection in order to alleviate an increasingly heavy traffic volume in the area and did not result from a plan by the state simply to take property. Therefore, following the reasoning of the court in *Collier*, we view this case as "more appropriately characterized as an [alleged] authorized governmental 'taking' allegedly in violation of [the plaintiffs'] constitutional right to just compensation rather than a tortious deprivation of property in violation of rights to procedural due process." *Collier*, 733 F.2d at 1313–14 n. 4. Accordingly, we conclude that the *Parratt–Hudson–Logan–Stana* line of cases are not directly on point and do not mandate a different result.

Finally we note that our analysis of the plaintiffs' civil rights claim also comports with notions of comity between state and federal courts and notions of federalism. As the court in *Collier* stated, "[t]o assume jurisdiction in a case of this type would mean the opening of a floodgate to a multiplicity of federal actions involving all aspects of state eminent domain proceedings which in truth should be adjudicated under state procedures and in state forums." 733 F.2d at 1317 (quoting *Light*, 472 F.Supp. at 338). We have no desire to open a floodgate to the federal courts or to decide cases which more appropriately belong in state courts.

Because in this case there is no established underlying tort, that is a deprivation of a right, privilege or immunity established by the constitution and laws of the United States, we cannot rule on the plaintiffs' civil rights claim. Accordingly, these claims are also dismissed without prejudice.

## III. CONCLUSION

The defendants' Motion for Summary Judgement will be denied. Instead, we will dismiss the plaintiffs' claims for lack of subject matter jurisdiction. If, after they have pursued their claims in state court, the plaintiffs have not been redressed for the alleged wrongs that may have occurred, they will be free to reinstitute their suit in this Court subject to the rules of claim and issue preclusion.

An appropriate order will follow.