ADRIANA MERCADO VDA. DE WILSON ET ALS., demandantes y peticionarios, *v.* HON. RAFAEL HERNÁNDEZ COLÓN ET AL., demandados y recurridos.

*Número:* CE-93-476          *Resuelto:* 9 de marzo de 1994

*Doel R. Quiñones Núñez,* abogado de los peticionarios; *Wanda Ortiz Rivera,* abogada de la Junta de Planificación.

## SENTENCIA

Evaluados los planteamientos de las partes, *se expide el auto y se confirma la Sentencia del Tribunal Superior, Sala de San Juan, de 2 de abril de 1993, ya que los demandantes Adriana Mercado Parra Vda. de Wilson et als. fueron debidamente notificados de la intención de la Compañía de Fomento Industrial de adquirir los terrenos en cuestión y éstos no objetaron oportunamente esa propuesta hasta después que la Junta de Planificación aprobó la consulta.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López emitió una opinión disidente y concurrente. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual

se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Alonso Alonso no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

**– O –**

Opinión concurrente emitida por el Juez Asociado Señor Negrón García, a la cual se une el Juez Presidente Señor Andréu García.

I

El 20 de agosto de 1992 la Compañía de Fomento Industrial (en adelante Fomento) notificó por carta a la Sucesión de Mario Mercado Riera su *intención* de adquirir unos terrenos de su propiedad ubicados al este de la Laguna de las Salinas, Sector El Tuque, en el Municipio de Ponce. A tal efecto, Fomento indicó que "estamos en el proceso de preparar las consultas reglamentarias correspondientes ante la Junta de Planificación y demás agencias con jurisdicción ...". *Exhibit* VII, pág. 018. Solicitó un permiso para entrar en la finca y realizar unos estudios de campo. Acompañaron un mapa. El propósito de esa futura adquisición era cumplir el requisito del Cuerpo de Ingenieros de Estados Unidos de compensar por varias áreas de terrenos húmedos afectados por otros proyectos de Fomento en Ponce.

Transcurrió el tiempo y la Sucesión Mario Mercado Riera (en adelante Sucesión) nada hizo. Luego del estudio de campo, el 28 de octubre, Fomento presentó ante la Junta de Planificación (en adelante Junta) la correspondiente consulta de ubicación y transacción. Al día siguiente la Junta la aprobó y autorizó la adquisición de ciento noventa (190) cuerdas de terreno "con el fin de ser preservados como reserva natural ...". *Exhibit* IX, pág. 021.

Notificada la Sucesión de esta resolución, el 6 de noviembre, su administradora y apoderada, Sra. Eileen María Coffey, le escribió a la Presidenta de la Junta, Sra. Patria G. Custodio, informándole que ningún miembro de la Sucesión había autorizado los estudios de campo. Además, le solicitó que dejara sin efecto dicha resolución hasta que celebrara una vista pública, aduciendo que la Sucesión nunca tuvo la oportunidad de presentar sus argumentos en oposición y defender sus derechos propietarios. En su carta, la señora Coffey informó su *intención* de presentar una solicitud de reconsideración antes de que venciera el término, según ella, el 18 de noviembre, y solicitó una copia certificada del expediente del caso.

La Junta denegó esos requerimientos mediante Resolución de 20 de noviembre. Le informó a la señora Coffey que para obtener una copia del expediente la Sucesión necesitaba pagar los derechos correspondientes y, además, que podía solicitar la revisión de la resolución ante el Tribunal Superior, Sala de San Juan. El 31 de diciembre la Sucesión así lo hizo.[1]

El 2 de abril de 1993 dicho foro (Hon. Arnaldo López Rodríguez, Juez) dictaminó "que los peticionarios fueron *formalmente notificados* por la Compañía de Fomento Industrial de su determinación de adquirir las 190 cuerdas de su propiedad, objeto de la *Consulta Núm. 92-63-D-224-JGU-T*, y que *éstos se cruzaron de brazos y no sometieron a la Junta de Planificación sus puntos de vista dentro del término dispuesto en la sección 4.02 del Reglamento de Planificación Núm. 2*, y habida cuenta de que en tales circuns-

---

[1] En su recurso de revisión, como único señalamiento, alegó:

"Erró la Junta de Planificación en no concederle la vista pública solicitada por los peticionarios el 6 de noviembre de 1992 —cuando los peticionarios no habían sido notificados de los actos previos de la Junta de Planificación, ni de los demás organismos gubernamentales; ya que la falta de notificación previa y oportunidad adecuada para los peticionarios a ser oídos constituyen, per se, violaciones al debido proceso de ley que garantiza el ordenamiento jurídico vigente cuando se dispone sobre propiedad perteneciente a los peticionarios, al emitir la Junta de Planificación sus resoluciones y el 20 de noviembre de 1982 declarar 'No Ha Lugar' a la solicitud oportuna de vista pública por los peticionarios." *Exhibit* XIII, pág. 43.

tancias la Junta está facultada para comenzar a evaluar la consulta sin estar obligada a tener que celebrar una vista pública, a la anterior solicitud de revisión, *No Ha Lugar*". (Énfasis suplido y en el original.) *Exhibit* I.

Oportunamente, la Sucesión presentó una solicitud de *certiorari* ante el Tribunal de Apelaciones de Puerto Rico, Sección Sur, el cual ordenó a la recurrida (Fomento) que mostrara causa por la cual no debía revocar y dejar sin efecto las actuaciones de la Junta. Fomento compareció y expuso que había notificado a la Sucesión que iba a presentar la Consulta Núm. 92-63-D-224-JGU-T ante la Junta para adquirir la finca y aquélla no pidió reconsideración. Adujo que no violó el debido proceso de ley, pues la Sucesión tuvo la oportunidad de expresar su oposición a la consulta y no lo hizo. Mediante una réplica, la Sucesión argumentó en contrario.

Al expirar las funciones el Tribunal de Apelaciones de Puerto Rico, por mandato legislativo, el caso pasó a nuestra consideración para su adjudicación.

## II

Nuestra Constitución consagra el derecho de todo ciudadano a disfrutar su propiedad y a no serle privada "sin [el] debido proceso de ley ...". Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 275.

Por su raigambre constitucional, este derecho aplica a los procedimientos adjudicativos en las agencias administrativas, el cual en su vertiente procesal "le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881 (1993). Véase, además, *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230–231 (1987). Nuestra casuística ha establecido diversos criterios a utilizarse para determinar si se ha

lesionado el debido proceso de ley, a saber: (a) notificación; (b) proceso ante un juzgador imparcial; (c) oportunidad de ser oído; (d) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (e) estar asistido de abogado, y (f) que la decisión esté fundamentada en el récord. *Domínguez Talavera v. Tribunal Superior*, 102 D.P.R. 423 (1974); *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10, 23 (1976); *Pueblo v. Andreu González*, 105 D.P.R. 315, 320 (1976); J. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1988, Vol. II, Cap. IX, págs. 337–338. Valga recordar lo siguiente:

> Como principio fundamental del debido proceso se ha consagrado el derecho de toda persona a ser oído antes de ser despojado de algún interés protegido; esta oportunidad de ser oído debe ser en: [un tiempo y modo significativo] *a meaningful time and a meaningful manner. Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 889, citando a *Mathews v. Eldridge*, supra, pág. 333.

Sin embargo, la aplicación del derecho al debido proceso de ley en el campo administrativo no goza de la rigidez que se le reconoce en la esfera penal. *A.D.C.V.P. v. Tribunal Superior*, 101 D.P.R. 875, 882 (1974). En cuanto a la vista oral previa, hemos resuelto que ésta no se requiere "en la etapa inicial de los procedimientos". *Ubarri Blanes v. Junta Hípica*, 96 D.P.R. 803, 807 (1968).

## III

La Sucesión aduce que la Junta violó el debido proceso de ley al denegarle una vista pública *durante* el proceso de aprobación de la consulta de ubicación y transacción de la finca. Al respecto, notamos que la Sec. 7.00 del Reglamento del Procedimiento para las Decisiones Adjudicativas de la Junta de Planificación de Puerto Rico de 23 de noviembre de 1989 dispone que la Junta *"podrá* ordenar la celebración de vistas administrativas a iniciativa propia o a petición de

partes, o vistas públicas en cualquier caso en que entienda que merecen seguir ese procedimiento cuando así lo establezca la reglamentación o legislación vigente". (Énfasis suplido.)

A su vez, la Sec. 6.01 del Reglamento sobre mejoras públicas (Reglamento de Planificación Núm. 2), Junta de Planificación de Puerto Rico, 2da ed. rev., Santurce, 1979, pág. 4-1, considera que "[l]a Junta estudiará, tramitará y resolverá las consultas y proyectos de construcción requeridos para mejoras públicas que sean sometidos bajo las disposiciones de este reglamento. *Cuando la Junta lo estime necesario se celebrarán vistas públicas con notificación a las partes*". (Énfasis suplido.)

Estas disposiciones reglamentarias ponen de manifiesto que en las expropiaciones forzosas, en las cuales se solicita la autorización de la Junta para adquirir determinado terreno para uso público, no es obligatorio ni indispensable, *sino discrecional*, celebrar unas vistas públicas en las cuales los titulares de los bienes puedan expresar su posición.

Como cuestión de realidad, el esquema estatutario y procesal vigente ofrece a los propietarios, *posteriormente*, más que suficientes oportunidades. La propia Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sec. 2907 *et seq.*, y la Regla 58 de Procedimiento Civil, 32 L.P.R.A. Ap. III, exigen que el Estado inicie un procedimiento judicial para expropiar o adquirir cualquier propiedad para uso público y pague una justa compensación. En ese procedimiento el titular tiene derecho a formular *sus defensas y objeciones a la expropiación*, incluso cuestionar el carácter público del uso a destinarse y la cuantía declarada como justa compensación. *De este modo, en la etapa verdaderamente crucial se provee el debido proceso de ley en el tribunal.*

Cónsono con este enfoque, en *E.L.A. v. Northwestern Const., Inc.*, 103 D.P.R. 377, 381 (1975), advertimos que el derecho del Estado a expropiar una propiedad privada con

sujeción a las limitaciones constitucionales le provee esa oportunidad y luego pagar una justa compensación, "sin que se derive de su texto la intención de que la misma [justa compensación] sea con anterioridad a la incautación". Y en *E.L.A. v. Registrador*, 111 D.P.R. 117, 120 (1981), resolvimos que la notificación y audiencia al dueño y acreedores con gravámenes inscritos "no t[enía] necesariamente que concederse antes de expedir la orden de adquisición y entrega. *Bast[a] con que sean oídos antes de dictarse la sentencia final*". (Énfasis suplido.)(²)

No tiene, pues, razón la Sucesión. Con suficiente anticipación fue debidamente notificada de la intención de Fomento de adquirir los terrenos. Después de los estudios de rigor, previa consulta y transacción, la Junta la aprobó en cumplimiento de los requerimientos del Cuerpo de Ingenieros federal. Esa resolución fue debidamente notificada a la Sucesión. Posteriormente, la administradora y apoderada de la Sucesión, señora Coffey, notificó, entre otras cosas, su deseo de que se dejara sin efecto dicha resolución hasta la celebración de las vistas públicas. La Junta la acogió como una reconsideración y denegó.

En resumen, bajo nuestra arquitectura constitucional

---

(²) La jurisdicción federal sigue igual trayectoria. En *Yearsley v. Ross Constr. Co.*, 309 U.S. 18, 22 (1940), resolvió que las personas cuya propiedad se expropia no tienen derecho a "notificación, vista ni compensación previa siempre y cuando exista un mecanismo adecuado para obtener la compensación". (Traducción nuestra.) Véanse: *Hurley v. Kincaid*, 285 U.S. 95, 104 (1932); *Light v. Blackwell*, 472 F. Supp. 333, 338 (E.D. Ark. 1979), confirmado en 620 F.2d 307 (8vo Cir. 1980); *Fountain v. Metro. Atlanta Rapid Transit Authority*, 678 F.2d 1038, 1045 esc. 13 (11mo Cir. 1982); *Collier v. City of Springdale*, 733 F.2d 1311, 1314 (8vo Cir.), *cert.* denegado, 469 U.S. 857 (1984); *Abbiss v. Delaware Dept. of Transp.*, 712 F. Supp. 1159, 1165 (D. Del. 1989), y casos allí citados.

Además, en *U.S. v. 131.68 Acres of Land or Less, Etc.*, 695 F.2d 872, 876 (5to Cir. 1983), resolvió:

"Los dueños y arrendatarios sostienen que tanto la Constitución como el Congreso aseguran el 'derecho' a una vista antes de que sean desposeídos de sus tierras. No estamos de acuerdo. La quinta enmienda no da ese derecho. 'La pregunta que genera esta controversia común es si el Gobierno puede ejercer su poder inminente de expropiación de acuerdo con la quinta enmienda al incautarse de la propiedad sin aviso, vista o compensación previa alguna. *La contestación es que sí*'. Citando a *Stringer v. United States*, 471 F.2d 381, 383 (5to Cir.), *cert.* denegado, 412 U.S. 943 (1973)." (Traducción nuestra.) Véase, además, *Hudson v. Palmer*, 468 U.S. 517 (1984).

no es obligatoria la celebración de una vista pública al evaluarse la consulta de ubicación y transacción de una expropiación forzosa. En virtud de la Ley de 12 de marzo de 1903, *supra*, y de la citada Regla 58 de Procedimiento Civil, la garantía del debido proceso de ley queda ampliamente satisfecha durante las etapas del procedimiento judicial.

Por los fundamentos expuestos, estimamos jurídicamente correcta la sentencia del Tribunal Superior, Sala de San Juan.

## – O –

Opinión disidente y concurrente emitida por el Juez Asociado Señor Rebollo López.

La aprobación y autorización de una consulta de ubicación y transacción por parte de la Junta de Planificación (en adelante Junta) —como la aquí radicada por la Compañía de Fomento Industrial— requiere que se lleve a cabo, o se celebre, un *procedimiento cuasi judicial* por parte de la referida Junta, a diferencia de uno *cuasi legislativo*.

La norma constitucional establecida por el Tribunal Supremo de los Estados Unidos, vigente actualmente, es a los efectos de que, por razones de naturaleza pragmática, no existe un derecho constitucional a ser oído en procedimientos *cuasi legislativos* de reglamentación. *Bi Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441 (1915).

Ahora bien, en relación con procedimientos *cuasi judiciales*, se ha reconocido el *derecho constitucional a ser oído* cuando una persona, o un grupo pequeño de personas, resultan excepcionalmente afectados por la determinación administrativa *que adjudica unos hechos en disputa*.

Véanse: *Londoner v. Denver*, 210 U.S. 373 (1908); *United States v. Florida East Coast R. Co.*, 410 U.S. 224 (1973).

No podemos estar conformes, en consecuencia, con la *escueta y errónea norma* que propulsan dos (2) de los integrantes del Tribunal en la opinión concurrente que emiten, a los efectos de que "bajo nuestra arquitectura constitucional no es obligatoria la celebración de una vista pública al evaluarse la consulta de ubicación y transacción de una expropiación forzosa". Opinión concurrente, págs. 283-284.

Somos del criterio que a la situación de hechos del presente caso le es aplicable la norma establecida por el Tribunal Supremo federal en *Londoner v. Denver*, ante, y *United States v. Florida East Coast R. Co.*, ante. Esto es, nos enfrentamos a una situación en que una persona o un grupo de personas resultan afectados, de manera excepcional, por una determinación administrativa de índole cuasi judicial o adjudicativa de unos hechos en disputa; razón por la cual los aquí peticionarios, *de haberlo solicitado*, hubieran tenido derecho a la celebración de una vista.[1]

No obstante lo anteriormente expuesto, *concurrimos con el resultado* a que se llega en la opinión mayoritaria. Ello por la sencilla razón de que los peticionarios, a pesar de haber sido notificados de la solicitud de la Compañía de Fomento Industrial, se "cruzaron de brazos", esto es, no pidieron audiencia ni levantaron reparos a la propuesta hasta después de haberse resuelto administrativamente la aprobación de la consulta.

---

[1] A nuestra manera de ver las cosas, *no* se puede ni debe minimizar la importancia de la celebración de la vista, en esta clase de situaciones, por la agencia administrativa.

La cuestión a determinar por la Junta de Planificación —la conveniencia o no de la expropiación— es una que, necesariamente, requiere, y va dirigida a, *la pericia y conocimiento técnico* de la Junta.

La parte afectada, en consecuencia, debe tener la oportunidad, en una vista, *de presentar sus puntos de vista, y prueba*, con el propósito de tratar de convencer a la Junta de su posición ya que, una vez resuelta la cuestión por dicha agencia administrativa, la norma jurisprudencial —en revisión judicial— es de *deferencia* hacia la pericia y conocimiento (*expertise*) de la Junta; situación *limitativa* de las oportunidades de éxito que la parte puede tener en el proceso de revisión judicial.

## – O –

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unió la Juez Asociada Señora Naveira de Rodón.

Por entender que la compañía de Fomento Industrial no cumplió con el requisito de notificación que exige la Junta de Planificación al presentar una consulta de ubicación de mejora pública, disentimos.([1])

---

([1]) Los reglamentos aplicables para la resolución del caso de marras son el Reglamento sobre Mejoras Públicas (Reglamento de Planificación Núm. 2), Junta de Planificación de Puerto Rico, 2da ed. rev., Santurce, 1979 (en adelante Reglamento sobre Mejoras Públicas), y el Reglamento del Procedimiento para las Decisiones Adjudicativas de la Junta de Planificación de Puerto Rico de 23 de noviembre de 1989.

El Reglamento del Procedimiento para las Decisiones Adjudicativas de la Junta de Planificación de Puerto Rico indica en su Sec. 1.03 que:

"Este Reglamento aplicará a todos los procedimientos *adjudicativos* que se ventilen en la Junta de Planificación referente a *consultas*, órdenes provisionales, órdenes de hacer y no hacer y de cese y desestimiento [sic] y otras adjudicaciones que formule la Junta."

En su Sec. 2 (Definiciones), inciso (11) dicho reglamento define *mejora pública* de la manera siguiente:

"Mejora Pública.—Toda mejora permanente; toda nueva construcción, ampliación o reconstrucción (sin incluir reparación) de obra pública autorizada, pagada, supervisada, dirigida, emprendida o controlada por algún organismo gubernamental, incluyendo, entre otras, *toda adquisición*, venta, permuta, *cesión*, arrendamiento o cambio en el uso de propiedades por cualquier funcionario u organismo y las llevadas a cabo mediante contratos de obra con entidades privadas." (Énfasis suplido.)

El proyecto en el caso de autos cae dentro de esta definición, ya que la Compañía de Fomento Industrial tenía que adquirir la finca de la Sucesión de Mario Mercado Riera (en adelante Sucesión) para luego cederla al Cuerpo de Ingenieros. El trámite de expropiación es sólo un aspecto dentro de este caso.

La Sec. 3.03 del Reglamento sobre Mejoras Públicas, pág. 3-1, expone lo pertinente a la presentación de la mejora pública:

"3.03–Presentación de la Mejora Pública.—Toda mejora pública deberá presentarse por el funcionario u organismo auspiciador, en primera instancia, *en forma de consulta* y luego en forma de proyecto de construcción, salvo cuando [esté] expresamente eximida de una o de ambas presentaciones mediante una resolución de la Junta." (Énfasis suplido.)

La Sec. 4.00 del Reglamento del Procedimiento para las Decisiones Adjudicativas de la Junta de Planificación de Puerto Rico expone que:

"... Las acciones de la Junta y otros requisitos sobre consultas relacionadas con *mejoras públicas* se regirán por las disposiciones del Reglamento sobre *Mejoras Públicas* (Reglamento de Planificación Núm. 2) vigente, complementadas por las disposiciones de cualquier otro reglamento en vigor adoptado o aprobado por la Junta." (Énfasis suplido.)

A continuación una breve relación de los hechos perti-
nentes a los fines de demostrar que la Compañía de Fo-
mento Industrial no cumplió con el ordenamiento vigente.

I

El 20 de agosto de 1992 el Presidente y Gerente General
Interino de la Compañía de Fomento Industrial (en ade-
lante Fomento) envió una carta dirigida a la Sucesión Ma-
rio Mercado Riera (en adelante la Sucesión) con el propó-
sito de solicitar una autorización para entrar a una finca
de su propiedad, de ciento noventa (190) cuerdas, y reali-
zar unos estudios de campo. En la referida carta Fomento
indicó lo siguiente:

> Estamos *en el proceso* de *preparar* las *consultas reglamentarias*
> *correspondientes* ante la Junta de Planificación y demás agen-
> cias con jurisdicción, con el propósito eventual de adquirir la
> propiedad. No obstante, *es necesario preparar estudios de*
> *campo previamente.*
> Les estamos notificando de nuestra intención de adquirir los
> terrenos mencionados.
> Solicitamos su autorización para que se permita la entrada a
> los terrenos a las personas oficialmente designadas por la Com-
> pañía de Fomento Industrial (CFI) para realizar dichos
> estudios.[2] (Énfasis suplido.) *Exhibit* VII, pág. 018.

Mediante Escrito de 28 de octubre de 1992, Fomento
presentó la consulta de ubicación requerida por el Regla-
mento sobre Mejoras Públicas (Reglamento de Planifica-
ción Núm. 2), Junta de Planificación de Puerto Rico, 2da
ed. rev., Santurce, 1979 (en adelante Reglamento sobre
Mejoras Públicas) y el Reglamento del Procedimiento para
las Decisiones Adjudicativas de la Junta de Planificación
de Puerto Rico de 23 de noviembre de 1989, dos (2) meses
después de la referida Carta de 20 de agosto de 1992. Di-

---

[2] Surge del expediente que la Sucesión Mario Mercado Riera nunca dio su
autorización para que los funcionarios de la Compañía de Fomento Industrial entra-
ran a sus terrenos.

cho escrito no fue notificado a los propietarios del predio. Un día después, la Junta de Planificación (en adelante Junta) aprobó la referida consulta y autorizó la adquisición de ciento noventa (190) cuerdas de terreno propiedad de la Sucesión. Esta resolución de la Junta, enviada el 29 de octubre de 1992, fue la primera y única notificación que los peticionarios recibieron sobre la *presentación*, revisión, consideración y aprobación de una consulta sobre la adquisición y segregación de la finca de su propiedad.

El 6 de noviembre, al día siguiente de recibir la resolución de la Junta, la administradora y apoderada de la Sucesión, señora Coffey, escribió a la Presidenta de la Junta informándole que "[q]uiero formular y, por la presente, radicar una solicitud de reconsideración en la Secretaría de la Junta de Planificación dentro del término de (20) veinte días contados a partir del archivo en autos de la notificación de esta resolución". (Énfasis suprimido.) *Exhibit* XI, pág. 027.

La Junta emitió una resolución el 20 de noviembre de 1992 en la que declaró *no ha lugar* la solicitud de reconsideración. La Junta, además, le informó a la señora Coffey que *podía solicitar la revisión de la resolución ante el Tribunal Superior, Sala de San Juan.*([3])

## II

La controversia a resolver en el caso de marras es si la carta enviada a la Sucesión de 20 de agosto de 1992 cons-

---

([3]) En su moción mostrando causa ante esta Curia, la Junta de Planificación plantea que la Sucesión nunca expuso sus puntos de vista ni dentro del término de diez (10) días que requiere la Sec. 4.02 del Reglamento sobre Mejoras Públicas, así como tampoco dentro del término de veinte (20) días que tenía para presentar la reconsideración de la consulta de 29 de octubre de 1992. Sin embargo, se desprende claramente de los hechos del caso que en la resolución que emitió la Junta, ésta considera la carta de la administradora y apoderada de la Sucesión como una solicitud de reconsideración, la declara no ha lugar y le indica a la parte que tiene que entablar un recurso de revisión ante el Tribunal Superior.

tituye una notificación al titular del predio, según lo requiere el Reglamento sobre Mejoras Públicas.

La Sec. 4.02 de dicho reglamento, págs. 3-3 a 3-4, trata sobre lo pertinente a la presentación de una consulta de ubicación. De acuerdo con dicha sección, una consulta conlleva lo siguiente:

> 4.02 *Radicación de la Consulta.*—Toda consulta requerida para cualquier mejora pública será radicada, para su consideración por la Junta, incluyendo una memoria explicativa describiendo la naturaleza y alcance del proyecto, costo aproximado y procedencia - de fondos y acompañada del correspondiente croquis o plano preliminar y documentación fehaciente de que el proponente es titular del predio o está expresamente autorizado a desarrollar en el mismo, cuando se trate de terrenos de propiedad pública, *o evidencia de que el proponente notificó al titular del predio cuando se trate de proyectos a ubicarse en terrenos privados.* La misma será acompañada, además, de una certificación que indique haber cumplido con la ley Número 9 del 18 de junio de 1970 (Ley sobre Política Pública Ambiental).
>
> Toda persona *notificada sobre la radicación de una consulta o proyecto de mejora pública* podrá someter a la Junta, con copia al funcionario u organismo auspiciador, sus puntos de vista dentro del término de diez (10) días contados a partir del recibo de la notificación. No obstante, la Junta podrá tramitar la consulta o el proyecto de mejora pública correspondiente sin que haya transcurrido el referido término, cuando el interés público envuelto así lo justifique. (Énfasis suplido.)

La mencionada Sec. 4.02 expone claramente que cuando se trate de proyectos a ubicarse en terrenos privados la consulta tiene que estar acompañada por evidencia de que el proponente *notificó* al titular del predio *sobre la presentación* de dicha consulta. En su segundo párrafo, la Sec. 4.02 expone que toda persona *notificada sobre la presentación de la consulta o proyecto de mejora pública* podrá someter a la Junta sus puntos de vista dentro del término de diez (10) días contados a partir del recibo de la notificación. Una lectura razonable de este párrafo deja claro el hecho de que la notificación al titular del predio es para informarle que una *consulta* sobre su propiedad *fue presentada.*

Por lo tanto, la referida notificación tiene que *concurrir* con la *presentación* porque la notificación tiene que ser " 'en un momento significativo y de una manera significativa' ". (Traducción nuestra.) *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).

Fomento argumenta en su moción mostrando causa a este Tribunal que la Carta de 20 de agosto fue suficiente notificación. Fomento no tiene razón porque dicha carta sólo establecía que estaban en *los trámites* de presentar una consulta de ubicación. En el momento en que Fomento envió dicha carta, la consulta estaba en etapas preliminares. La notificación sólo cumple su propósito si se hace en el momento adecuado. No tiene sentido notificar sobre una consulta de ubicación dos (2) meses antes de que ésta sea presentada ante la Junta. Es preciso que el titular del predio sea notificado una vez se presenta la consulta, porque es a partir del recibo de la notificación que se activa el término de diez (10) días para que toda persona notificada someta a la Junta sus puntos de vista y reacciones sobre la consulta.

En el caso de autos el término de diez (10) días nunca se activó, ya que el titular del predio no fue notificado. Fomento no cumplió con el requisito de notificación que exige la citada Sec. 4.02 y, como resultado, se vio afectado el derecho a un debido proceso de ley de los peticionarios, la Sucesión, que tienen un interés propietario.

### III

La Junta erró al aprobar la consulta de ubicación de mejora pública presentada por Fomento cuando el requisito de notificación fue incumplido. El Reglamento del Procedimiento para las Decisiones Adjudicativas de la Junta de Planificación de Puerto Rico de 23 de noviembre de 1989, en su Sec. 4.00, establece que "[*u*]*na consulta de ubi-*

*cación no se considerará radicada hasta que se haya cum-
plido con todos los requisitos de radicacio".*

Fomento le certificó a la Junta que había notificado a la
Sucesión sobre la presentación de la consulta, pero no lo
había hecho porque la carta enviada dos (2) meses antes no
constituye una notificación como lo requiere el
Reglamento. Por lo tanto, la consulta no se puede conside-
rar presentada hasta que se le notifique a la Sucesión y
ésta se exprese al respecto dentro del término de diez (10)
días que dispone el Reglamento sobre Mejoras Públicas. Al
no ser notificados sobre la presentación de la consulta ante
la Junta, la Sucesión no tuvo derecho a ser oída y, por lo
tanto, no se pudo expresar en ese momento sobre si solici-
taría una vista administrativa o no, ni sobre otras posibles
interrogantes.

En el caso de autos la Junta se apartó, de forma drás-
tica y sin justificación, de los procedimientos que rigen la
presentación de una consulta de ubicación de mejora
pública. No estamos de acuerdo con esta actuación de la
Junta. Una agencia administrativa viene obligada a obser-
var estrictamente sus propios reglamentos y no puede que-
dar a su soberana voluntad reconocer o no los derechos que
ella misma le ha extendido por reglamento a sus
empleados. *García v. Adm. del Derecho al Trabajo*, 108
D.P.R. 53 (1978).

El resultado de que la agencia no siguiera sus procedi-
mientos ordinarios fue violarle a la Sucesión el debido pro-
ceso de ley que garantiza la Sec. 7 del Art. II de la Consti-
tución del Estado Libre Asociado de Puerto Rico, L.P.R.A.,
Tomo 1. Recientemente nos hemos expresado sobre este
particular:

> *Como principio fundamental del debido proceso se ha consa-
> grado el derecho de toda persona a ser oído antes de ser despo-
> jado de algún interés protegido*; esta oportunidad de ser oído
> debe ser en: *a meaningful time and a meaningful manner.* ... La
> privación de la libertad o propiedad *sin notificación u oportuni-*

*dad de ser oído* se ha considerado siempre ajeno al debido proceso y en ocasiones es fuente de responsabilidad civil. (Énfasis en el original.) *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 889 (1993).

No vemos justificación alguna para que en el caso de marrras no se haya cumplido con los requisitos que exigen los Reglamentos de la Junta para la presentación de una consulta de ubicación de mejora pública. Creemos que al no notificar a los peticionarios en el momento debido se les privó de su derecho de someter a la Junta sus puntos de vista dentro del término de diez (10) días contados a partir del recibo de la notificación.

Por cuanto antecede, disentimos de la sentencia emitida por este Tribunal.